McSHANE v. MOLDOVAN et al.

No. 10703.

United States Court of Appeals
Sixth Circuit.

Feb. 8, 1949.

Hugh Davidson, of Detroit, Mich. (Hugh Davidson and Helen A. Theut, both of Detroit, Mich, on the brief), for appellant.

Emil Wm. Colombo, of Detroit, Mich., for appellees.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

This is an appeal from dismissal of a complaint seeking damages against appellees for their alleged wrongful conduct in arresting and imprisoning appellant and causing her to be unlawfully tried in a criminal case resulting in deprivation of her constitutional rights under the Fourteenth Amendment to the Constitution of the United States.

Appellant brought her action in the district court, charging appellees with conspiring to obstruct and defeat the due course of justice in the State of Michigan, with intent to deny to her the equal protection of the laws, and for the purpose of depriving her of her right to be tried in accordance with due process of law. On motion of counsel for appellees, the district court dismissed the complaint on the ground that appellant did not state a cause of action; and she thereafter appealed.

In appellant's complaint, she alleged that the conduct of appellees was willful and malicious and designed to deprive her of her rights, privileges, and immunities as secured by the Fourteenth Amendment to the Constitution of the United States. She claimed that pursuant to the conspiracy on the part of a justice of the peace, a complaining witness, a constable, and others, she was arrested in her home without a warrant on a charge of assault, contrary to the laws and constitution of the State of Michigan. She asserts that she demanded a jury trial by an impartial jury, to which she was entitled by the laws and constitution of the State of Michigan; that

the justice of the peace was thereupon required by law to direct a disinterested constable or other person to write down the names of eighteen inhabitants of Wayne County qualified as jurors; that it was the duty of the constable thereafter to select persons for jury service without favor or partiality to either party, so that from such list, the People, on the one hand, and the appellant, on the other, should have the privilege of striking six names each from such list, leaving six names thereon, which would afford to appellant, had the other provisions of the law been complied with, an impartial jury in accordance with the laws of the state. Appellant, however, alleged that instead of directing a disinterested person or constable to prepare the jury list, the justice of the peace, acting pursuant to the conspiracy, directed the constable in question to prepare the list; that such constable was also a party to the conspiracy, together with the complaining witness and the justice of the peace, and pursuant to the conspiracy, fraudulently prepared a list, in which all but two competent jurors were excluded; that, in lieu of competent jurors, the appellees unlawfully conspired together and caused to be selected and placed upon the jury persons who were under political obligation to appellees and who were known to be hostile to appellant; that, as a result, appellant was unlawfully imprisoned; that she was deprived of her right to be tried according to due process of law; that she suffered an illegal conviction and sentence; and was required to appeal her case to the state circuit court, where, before an impartial jury, she was finally acquitted.

The Fourteenth Amendment, in so far as here applicable, provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Appellant asserted jurisdiction in the district court over her action by virtue of Title 28 U.S.C.A. § 41(14)[1], which pro-

---

[1] In 1948 Judicial Code, see 28 U.S.C.A. § 1343.

vides: "Suits to redress deprivation of civil rights. Fourteenth. Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

Title 8 U.S.C.A. §§ 43 and 47, known as the Civil Rights Statutes, under which complainant proceeded in this case, give the right of a civil action for deprivation of rights, privileges, and immunities secured by the Constitution.

Title 8 U.S.C.A. § 43, provides: "Civil action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Title 8 U.S.C.A. § 47, in so far as here applicable, provides: "* * * if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." [2]

At the outset, it is to be observed that the guarantees of the Fourteenth Amendment relate only to action by a state, and not to any action of private individuals. In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; National Federation of Railway Workers v. National Mediation Board, 71 U.S.App.D.C., 266, 110 F. 2d 529. Individual invasion of individual rights is not the subject matter of the Amendment; Corrigan v. Buckley, 271 U. S. 323, 46 S.Ct. 521, 70 L.Ed. 969; and such an invasion gives no right of action in the federal courts against acts of private individuals. Where a suit is essentially one for malicious prosecution and false imprisonment carried out by individuals, it is properly enforceable in the state courts. The wrongful act of individuals is a private wrong. The complaint in the instant case was brought on the theory that officials of the State of Michigan, conspiring with others and acting under color of Michigan law, deprived appellant of rights secured to her by the Fourteenth Amendment.[3]

---

[2] Sections 43 and 47 grant separate and distinct rights of action. Section 43 gives a cause of action for denial of due process of law; and Section 47, for denial of the equal protection of the laws. See Mitchell v. Greenough, 9 Cir., 100 F. 2d 184; Bottone v. Lindsley, 10 Cir., 170 F.2d 705.

[3] Violation of similar rights under other Constitutional Amendments gives rise to no individual actions for damages, according to the cases in which that issue has been adjudicated. In Viles v. Symes, 10 Cir., 129 F.2d 828, certiorari denied, 317 U.S. 633, 63 S.Ct. 67, 87 L.Ed. 511, rehearing denied, 317 U.S. 711, 63 S.Ct. 323, 87 L.Ed. 567, where a party sought to assert a cause of action for violation of his rights under the Fifth Amendment resulting in a claimed wrongful trial, conviction, and imprisonment arising from an alleged conspiracy between a federal judge, the district attorney, and the witnesses in the case, it was held that the gravamen of his suit was one for malicious prosecution and false imprisonment. The court ruled that the party's right to a speedy, fair, and impartial trial was protected by the Fifth Amendment, but that such Amendment

■ If the allegations of the complaint are true, appellant was falsely imprisoned and subjected to fraudulent trial in a criminal case and a wrongful conviction by reason of a willful and malicious conspiracy designed to that end and carried out by officials of the State of Michigan and others, acting under the guise of Michigan law. Such conduct would amount to a deprivation of plaintiff's liberty without due process of law.

The issue before us is whether a conspiracy entered into between state officers and others acting under color of state law to deprive a person of constitutional rights secured under the Fourteenth Amendment, and resulting in deprivation of such rights, gives rise to an action for damages against the conspirators under Title 8 U.S.C.A. §§ 43 and 47.[4]

In arriving at our determination, the most important question for decision is whether the allegations of the complaint disclosed that appellees, in their alleged conduct, acted "under color of law."

The leading case bearing on the issue before us is Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330. There, a sheriff, a deputy sheriff, and a policeman, all law officers of the State of Georgia, arrested a Negro citizen of that state on a warrant, charging him with the theft of a tire. There was evidence that the sheriff had a grudge against the Negro and had threatened to "get" him. They handcuffed the prisoner, and took him by car to the courthouse. When they alighted from the car, the law officers began beating the prisoner with their fists and with a solid bar blackjack weighing two pounds. Although the prisoner was handcuffed at the time, the excuse given for beating him was that he had reached for a gun, and used insulting language. After the prisoner, still handcuffed, had been knocked to the ground, the law enforcement officers continued to beat him for about half an hour until he was unconscious. He was then dragged, feet first, through the courthouse yard into the jail and thrown upon the floor dying. An ambulance was called, and the Negro was removed to a hospital where he died within the hour without regaining consciousness. An indictment was returned against the officers in the federal district court on counts charging a violation of Section 20 of the Criminal Code, Title 18 U.S.C.A., § 52,[5] and a conspiracy to violate Section 20, contrary to Section 37 of the Criminal Code, Title 18 U.S.C.A. § 88.[6] Section 20, 18 U.S.C.A. § 52, provides: "Depriving citizens of civil rights under color of State laws. Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected,

did not confer jurisdiction upon the court to entertain the suit against the named defendants; and it was pointed out that the complainant in that case did not assert the deprivation of any right under color of state law which would bring him within the purview of the Civil Rights Acts. In Bell v. Hood, D.C., 71 F.Supp. 813, it was emphasized that the federal government, as sovereign, had never consented to be sued for damages resulting from invasion of the rights protected by the Fourth and Fifth Amendments; that the immunity of the federal government from suit extends to all federal officers and agents acting within the scope of their duties as such; and that whenever a federal officer or agent exceeds his authority, in so doing, he no longer represents the government and hence loses the protection of sovereign immunity from suit. Nevertheless, on a prior appeal in the same case, the Supreme Court observed that it had never specifically decided whether federal courts could grant any recovery for damages said to have been suffered as a result of federal officers' violating the Fourth and Fifth Amendments. Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939.

[4] One of the grounds upon which the motion to dismiss was based was that the district court had no jurisdiction, and the record is somewhat vague as to the reasons for dismissal of the complaint. In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, it was held that whether a complaint states a cause of action on which relief could be granted for violation of constitutional rights is a question of law which must be decided after and not before the court assumes jurisdiction.

[5] In 1948 Judicial Code, see 18 U.S.C.A. § 242.

[6] In 1948 Judicial Code, see 18 U.S.C.A. § 371.

any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

Section 37 of the Criminal Code, Title 18 U.S.C.A. § 88, provides: "Conspiring to commit offense against United States. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

The indictment charged that the officers, acting under color of the laws of Georgia, willfully caused the deceased prisoner to be deprived of rights, privileges, or immunities secured or protected to him by the Fourteenth Amendment—the right not to be deprived of life without due process of law; the right to be tried, upon the charge on which he was arrested, by due process of law, and if found guilty, to be punished in accordance with the laws of Georgia; that is to say, that the officers "unlawfully and wrongfully did assault, strike and beat the said Robert Hall about the head with human fists and a blackjack causing injuries * * * which were the proximate and immediate cause of his death." A like charge was made in the conspiracy count.

In the district court, the sheriff filed a demurrer to the indictment, alleging that the matters charged did not constitute an offense against the United States and did not come within the purview of Section 20 of the Criminal Code. The demurrer was overruled, and upon trial, the defendant was convicted. The judgment was affirmed in the circuit court of appeals, and on certiorari to the Supreme Court, the judgment was likewise affirmed.

The sections of the statute, Title 18 U.S.C.A. §§ 52 and 88, which were before the court in the Screws case, are not before us in the instant case. Here, Title 8 U.S.C.A. § 43, is before us for construction; but it is to be construed as in pari materia with Title 18 U.S.C.A. § 52, making such conduct a criminal offense. Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, certiorari denied 332 U.S. 776, 68 S. Ct. 38.

What was said and decided in the Screws case is, therefore, of importance in the present case, as it is the latest expression of the Supreme Court with respect to the conduct of state officers in depriving persons of due process of law in violation of the Fourteenth Amendment.

In the Screws case, it was contended that the officers did not act "under color of any law" within the meaning of Section 20 of the Criminal Code. But the court held that their conduct came within the statute inasmuch as they were the officers who made the arrest; that, according to their own admissions, they assaulted the prisoner to protect themselves and keep him from escaping; and that it was their duty under Georgia law to make the arrest effective. The problem was not, as the Court stated, whether state law had been violated, but whether an inhabitant of a state had been deprived of a federal right "by one who acts under 'color of any law.' He who acts under 'color' of law may be a federal officer or a state officer. He may act under 'color' of federal law or of state law. The statute does not come into play merely because the federal law or the state law under which the officer purports to act is violated. It is applicable when and only when some one is deprived of a federal right by that action. The fact that it is also a violation of state law does not make it any the less a federal offense punishable as such. Nor does its punishment by federal authority encroach on state authority or relieve the state from its responsibility for punishing state offenses." Screws v. United States, 325 U.S. at page 108, 65 S. Ct. at page 1038, 89 L.Ed. 1495, 162 A.L.R. 1330.

It was further said that an officer might be guilty of murder under state law, and at the same time, be liable for the federal offense prescribed by Section 20, and that while it is not within the power of the United States to punish for a conspiracy to falsely imprison or murder within a state, nevertheless, if the state action is of a particular character and results in such imprisonment or murder, it is prohibited by the Fourteenth Amendment; and Congress is authorized to afford relief thereunder. In Section 20 of the Criminal Code, Congress did not undertake to make all torts of state officials federal crimes. "It brought within § 20 only specified acts done 'under color' of law and then only those acts which deprived a person of some right secured by the Constitution or laws of the United States." 325 U.S. at page 109, 65 S.Ct. at page 1039, 89 L.Ed. 1995, 162 A.L.R. 1330. Where state officers are authorized to make an arrest and to take such steps as are necessary to make the arrest effective, they act without authority of the state only in the sense that they used excessive force. "It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea." 325 U.S. at page 111, 65 S.Ct. at page 1040, 89 L.Ed. 1495, 162 A.L.R. 1330. The question before the court was cast in sharp relief by the dissenting opinion, in which it was denied that the legislation in question, which was intended to effectuate prohibitions against states for defiance of the Constitution, was equally applicable where a state duly obeyed the Constitution, but an officer flouted state law and was unquestionably subject to punishment by the state for his disobedience; and it was declared that the "practice of government for seventy-five years likewise speaks against it. Nor is there a body of judicial opinion which bids us find in the unbridled excess of a State officer, constituting a crime under his State law, action taken 'under color of law' which federal law forbids." 325 U.S. at page 146, 65 S.Ct. at page 1057, 89 L.Ed. 1495, 162 A.L.R. 1330. However, the view of Mr. Justice Douglas, speaking for the majority of the court in the Screws case, is now the controlling law.

In its holding in the Screws case, the Supreme Court reaffirmed its decision in United States v. Classic et al., 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368. In that case, an indictment charging violation of Section 20 of the Criminal Code set forth that state election officers of Louisiana, while performing official duties, misused the powers they were authorized to exercise, and by their action, indirectly deprived a citizen of the right to vote under the Constitution, by refusing to count the votes, or by altering the ballots. Demurrers based on the ground that the statute did not apply to the facts stated, and, if applicable, was without constitutional sanction, were sustained by the district court. In reversing the lower court, the Supreme Court said: "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." 313 U.S. at page 326, 61 S.Ct. at page 1043, 85 L.Ed. 1368.

Since the Screws case, the same question has come before the Circuit Court of Appeals for the Third Circuit in Picking v. Pennsylvania R. Co., 151 F.2d 240, certiorari denied 332 U.S. 776, 68 S.Ct. 38. That case was decided squarely upon the provision of the statute that is before us in this case, 8 U.S.C.A. § 43. The complaint had asserted that individual defendants who were officers either of the state of Pennsylvania or New York, together with a third party, entered into a conspiracy to deprive plaintiffs of their liberties without due process of law, which was consummated by arresting and imprisoning them in violation of the laws of both Pennsylvania and New York. The district court held that the complaint failed to state a cause of action. On review by the circuit court of appeals, the district court was reversed. In delivering the opinion on

appeal, Judge Biggs observed that [151 F.2d 248] "It was thought that, absent diversity of citizenship, the federal courts did not have jurisdiction to enjoin action by officers of agencies of a state in violation of the Fourteenth Amendment when the so-called state action was prohibited by state law." The court then went on to review Screws v. United States, supra, and United States v. Classic, supra, stating that there was no question now as to the sufficiency of the statute to grant a right of civil action, and held that by the provisions of Title 8 U.S. C.A. § 43, "Congress gave a right of action sounding in tort to every individual whose federal rights were trespassed upon by any officer acting under pretense of state law." The court concluded that the plaintiff had stated a cause of action under the statute in alleging that the state officials had conspired with another to deprive the appellant of her rights under the Fourteenth Amendment, under color of law.

Bottone v. Lindsley, 10 Cir., 170 F.2d 705, 707, is somewhat similar to the case before us with respect to the allegations of the complaint. There, the party brought an action under Title 8 U.S.C.A. §§ 43 and 47, against an administrator, and the lawyers and a judge who participated in a suit prosecuted by the appellant in the district court of Colorado. The complaint alleged that the defendants had conspired to deprive appellant of his property without due process of law and of the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States. It was particularly alleged that the state court had wrongfully assumed jurisdiction of the subject matter, denied appellant a jury trial, and allowed a cross-claim against him. The federal district court sustained a motion to dismiss on the grounds that the complaint did not state facts sufficient to constitute a claim upon which relief could be granted. The decision of the lower court was affirmed by the federal court of appeals. In its opinion, the court of appeals stated that it doubted that a judge, acting in his official capacity, even in concert with officers of his court, acts under color of state law in the trial of a

case between private parties. It is to be observed that the instant case arises out of a criminal prosecution. The court in the Bottone case, however, went on to say: "It is conceivable that persons, either individually or acting in concert might so use the state judicial process as to deprive a person of his property without due process of law, or of equal protection of the laws, yet we are certain that to make out a cause of action under the Civil Rights Statutes, the state court proceedings must have been a complete nullity, with a purpose to deprive a person of his property without due process of law."

What distinguishes the Bottone case is this: The action which plaintiff claimed was a deprivation of due process and equal protection of the laws took place in the state trial court. Plaintiff appealed that judgment to the State Supreme Court, and the judgment was there affirmed. The federal court of appeals, after stating these facts, declared, "Without more, it is clear that the appellant was not denied due process of law or the equal protection of the law, cognizable under the Civil Rights Act." In the present case, appellant, after her conviction on the alleged fraudulent trial, appealed to the state circuit court where the judgment was in effect reversed and the conviction, set aside. We feel that the facts in the Bottone case clearly are distinguishable from those in the present controversy.

We are not unmindful of the circumstances that, in the motion to dismiss which was made by counsel for appellees, it was set forth that the allegations made in the complaint that appellees procured the arrest of appellant without a warrant and deprived her of a jury trial and of her constitutional rights, were false and contrary to official public records. Purported copies of such records were attached to the motion to dismiss and made a part thereof; and such purported copies appear in the transcript in this case. They would seem to disprove the allegation that appellant was arrested without a warrant, contrary to one of the allegations in the complaint. However, none of these matters was ever considered by the district court in its judgment of dismissal and the only question

now before us is whether the district court was right in dismissing the complaint for failure to state a cause of action.

The allegations of the complaint in the instant case charged state officers and others with combining in a willful and malicious conspiracy to deprive appellant of the rights secured to her by the Fourteenth Amendment. They charged that these persons, pursuant to such conspiracy, unlawfully arrested and imprisoned appellant and subjected her to a fraudulent criminal trial; and that, in carrying out their conspiracy in this way, they acted under color of the laws of Michigan. It was further asserted in the complaint that, as a result of such conduct carried out under color of the laws of Michigan, appellant was deprived of the constitutional rights secured to her by the Fourteenth Amendment. In the light of the authorities above set forth, we are of the opinion that the allegations of the complaint stated a cause of action over which the district court had jurisdiction.

The judgment of the district court dismissing the case is, accordingly, reversed, and the cause is remanded to the district court for trial.