Edward James KENNEY, Jr.,
Plaintiff,

v.

Malcolm K. HATFIELD, Thomas N. Robinson, Dr. Roy A. Morter, and Dr. Joseph McCarthy, Defendants.

Civ. A. No. 2415.

United States District Court
W. D. Michigan, S. D.

July 6, 1955.

Edward James Kenney, Jr., Benton Harbor, Mich., for plaintiff.

Alexander, Cholette, Buchanan, Perkins & Conklin, Grand Rapids, Mich., Charles W. Gore, Benton Harbor, Mich., Perry Maynard, Asst. Atty. Gen., for defendants.

KENT, District Judge.

Plaintiff files this action under Section 1983 of Title 42, U.S.C.A. (formerly Sec. 43 of Title 8),[1] and under Section 1343 of Title 28, U.S.C.A.,[2] and under certain sections of the Statutes of the State of Michigan.[3]

It appears that plaintiff, on or about the 18th day of November, 1950, was adjudged mentally ill by the defendant, Malcolm K. Hatfield, Judge of Probate for the County of Berrien, Michigan, and was ordered committed to a hospital for the mentally ill. The commitment was pursuant to a petition made by one William J. Pugh, a deputy sheriff of Berrien County, Michigan. It is alleged by the plaintiff that the making of such petition by Pugh was on recommendation of defendant, Thomas N. Robinson, who was then a licensed attorney, practicing law in the City of Benton Harbor, County of Berrien, Michigan.

On November 28, 1950, plaintiff was taken into custody and delivered to the

---

[1]. 42 U.S.C.A. § 1983: "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2]. 28 U.S.C.A. § 1343: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
"(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
"(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

[3]. Act 151, 1923 as amended by Act 271, 1945, being 10 M.S.A. § 14.801 et seq., Comp.Laws Mich.1948, § 330.1 et seq.

816

Kalamazoo State Hospital, an institution for the mentally ill maintained by the State of Michigan in Kalamazoo, Michigan, where he was confined until on or about the 17th day of August, 1952.

Subsequent to his release from the hospital, plaintiff filed an action in the Circuit Court for Berrien County, Michigan, to test the validity of the proceedings leading to his commitment. After hearing the commitment was determined to be void because the proceedings did not comply with the provisions of the applicable statutes of the State of Michigan.

Defendant, Roy A. Morter, is the Medical Superintendent of the Kalamazoo State Hospital. Defendant, Joseph McCarthy, is a physician on the staff of the Kalamazoo State Hospital. It is claimed by the plaintiff that the said Dr. McCarthy was the Medical Director of Receiving Hospital and of the North Wing of the Male Center Building, which establishments are a part of the Kalamazoo State Hospital.

The plaintiff and all of the defendants are residents of the State of Michigan.

It is the theory and claim of the plaintiff that the defendant Hatfield was acting under color of State law but without jurisdiction and contrary to the law and contrary to the provisions of the Constitution of the United States in the proceeding which resulted in plaintiff's commitment to the hospital. Plaintiff alleges that the defendant doctors, Morter and McCarthy, knew or should have known that the plaintiff was illegally committed, and further alleges that the defendants McCarthy and Morter refused to take any action to secure his release from the hospital, although they knew or should have known that the plaintiff was not mentally ill. Plaintiff claims that in so acting the said defendants were acting under color of Michigan law but in violation thereof and in violation of the provisions of the Constitution of the United States.

There are no specific allegations relative to any conspiracy among the four defendants, and a reasonable reading of the complaint as amended, viewed in the light most favorable to the plaintiff, does not disclose any implication that such a conspiracy existed. There is no claim on the part of the plaintiff that any of the defendants acted because of any malice, either actual or implied, directed toward this plaintiff as an individual, or directed toward any other individual alleged to be mentally ill.

Basically, plaintiff alleges that each of the parties participated, at some point, in a series of acts which resulted in the confinement of the plaintiff in the hospital referred to, and in his continued detention in that institution. It is the theory and claim of the plaintiff that the acts of the several defendants amounted to a deprivation of his rights, privileges and immunities contrary to the Constitution of the United States and the laws on which the action is based.

Each of the named defendants has filed a motion to dismiss plaintiff's complaint. Each motion suggests a number of theories and reasons why the complaint should be dismissed, making reference to the court's jurisdiction. In each motion the ground which appears to the Court to be most material is the allegation that the complaint of the plaintiff, as amended, does not state a claim upon which relief can be granted in this court. It should be stated at the outset that if the complaint states a cause of action based upon a deprivation of plaintiff's Civil Rights which are protected by the statutes and the Constitution of the United States, then a diversity of citizenship is not required. Further, it is the court's opinion that under Rule 20, Rules of Civil Procedure, 28 U.S.C.A., covering permissive joinder of parties, all of the parties are properly joined in this one action.

As to the defendant Malcolm K. Hatfield, who was at the time of the alleged improper action, and is now, the Judge of Probate for Berrien County, Michigan, the determination of the liability of such defendant depends pri-

marily on the liability of judges, for civil damages, because of errors in assuming jurisdiction, or because of errors in the exercise of jurisdiction, in cases which are properly before the court over which said judge presides. This question has been thoroughly reviewed in a recent case in this court, in which the plaintiff in this case was also the plaintiff, entitled—Kenney v. Fox, 132 F.Supp. 305, a copy of which opinion has been previously furnished to this plaintiff. This court is aware of the circumstances upon which that action was based and is in entire accord with the conclusion reached by Chief Judge Raymond W. Starr in dismissing that action on the motion of the defendant, who is one of the Circuit Judges for Kalamazoo County, Michigan. It is the conclusion of this court, for the reasons therein stated, which are herein adopted, that judges are not liable for civil damages under the statute under which this action is brought. For the reasons therein stated the allegations of plaintiff's complaint, as amended, in relation to the defendant, Malcolm K. Hatfield, do not state a claim on which relief could be granted, assuming each and every allegation in the complaint to be true.

As to the defendant, Thomas N. Robinson, the allegations of plaintiff's complaint are to the effect that said defendant, then an attorney in private practice, advised Deputy Sheriff Pugh in connection with the preparation of the petition which was filed as the first step in the proceedings which resulted in plaintiff's commitment to the Kalamazoo State Hospital. There is no allegation that the defendant Robinson was acting in any official capacity or that any of his acts, proper or improper, could be classed as the acts of the State of Michigan, except as the petition was made allegedly pursuant to the provisions of the statutes of the State of Michigan. No case has been discovered wherein the Civil Rights Statute, on which plaintiff bases his action, has been held to give one in the position of the plaintiff an action against a private individual not acting "under color of law" for wrongs done, even though the acts of such individual may have ultimately resulted in a deprivation of constitutional rights, privileges or immunities. Rather such statute appears to have been limited in application to persons who have used or misused the powers granted to them by virtue of political offices, held by them, for the purpose of *wilfully* depriving a person of constitutional rights, privileges or immunities. Williams v. Yellow Cab Co. of Pittsburgh, 3 Cir., 1952, 200 F.2d 302; Shemaitis v. Froemke, 7 Cir., 1951, 189 F.2d 963; Watkins v. Oaklawn Jockey Club, 8 Cir., 1950, 183 F.2d 440.

As stated in Whittington v. Johnston, 5 Cir., 1953, 201 F.2d 810, at page 811—

"It is a non sequitur to say that merely by instituting the lunacy proceeding, the defendants 'caused' plaintiff to be deprived of her right to due process within the meaning of 8 U.S.C.A. § 43. If there was any denial of due process, the efficient cause thereof was the omission of the state probate judge to give notice of the proceeding. That failure is not attributable to these defendants. Whether or not notice should be given is committed by the Alabama statute to the discretion of the probate judge. These defendants had no duty in that behalf. They simply instituted the lunacy proceeding as the Alabama statute authorized them to do, and left the conduct thereof wholly to the discretion of the probate judge whose duty and function it was to give any necessary notice."

It appears to this court that the reasoning set forth in the quotation applies to the claims asserted by the plaintiff against the defendant, Thomas N. Robinson.

It is the conclusion of this court that the allegations of fact and the statute on which this action is based do not

permit the granting of relief for the actions of persons acting as private citizens.

Plaintiff's complaint as amended does not allege a claim, on which relief could be granted, against the defendant, Thomas N. Robinson.

The defendants, Morter and McCarthy, were, at the time of plaintiff's commitment, and are now employed by the State of Michigan in a hospital for the mentally ill maintained at Kalamazoo by the State of Michigan.

█ It is difficult to conclude that the acts of these defendants, in receiving the plaintiff at the Kalamazoo State Hospital and in detaining him, were not under color of law. It is noted, however, that these defendants were required to receive the plaintiff at the hospital by virtue of the order of the Probate Court of Berrien County, and pursuant to the statutes of the State of Michigan. Michigan Statutes Annotated § 14.805(10), Comp.Laws Mich. 1948, § 330.15. A copy of the order in question has been filed in this cause on behalf of the defendant McCarthy. The order is fair on its face and is one to which the defendants were required to be amenable. These defendants not only should not be expected, but should not be permitted, to go behind a court order, which appears on its face to be valid, and attempt to question the propriety of the entry of the order, in the case of the commitment of an alleged mentally ill person to an institution by which they are employed. The cited statute provides in part—

"* * * The order for admission shall be full and sufficient authority and protection to the medical superintendent, or the person acting as such in his absence, for receiving and detaining in such institution the person named therein, and he shall not be liable to any suit or action on account thereof. * *"

The Michigan Statute, M.S.A. § 14.-825, Comp.Laws Supp.Mich.1954, § 330.-35, vests in the medical superintendent of a state hospital for the mentally ill, in the State of Michigan, the discretion to discharge—

"Fourth, A patient cared for by an institution as mentally ill, feeble-minded or epileptic and who in the opinion of the medical superintendent is not mentally ill, feeble-minded nor epileptic."

The allegations in plaintiff's complaint as amended are not sufficient to justify any conclusion that either of the defendants, Morter or McCarthy, acted in any unreasonable or capricious manner in the exercise of such statutory discretion, or that either intentionally sought to deprive the plaintiff of the rights, privileges and immunities guaranteed to him by the Constitution of the United States.

A similar question was raised in Francis v. Lyman, 1 Cir., 1954, 216 F.2d 583. This was an action against a former commissioner of correction, parole board members and superintendents of two state institutions for the detention of mental defectives, all in the State of Massachusetts. The district court dismissed the complaints for failure to state facts on which relief could be given and the dismissal was upheld by the Court of Appeals of the First Circuit. We quote at length from the decision of the Court of Appeals because of its applicability to the facts of this case as they relate to the defendants Morter and McCarthy. On page 585 the Court said, referring to the plaintiff's confinement:

"It is true they failed to order his release; but this was nonfeasance in a situation where the Commissioner had neither the legal duty nor the legal authority to act."

The Court further says, at page 586, referring to the superintendents of the state institutions:

"We do not pretend that it is easy to explain why these two defendants are not liable in damages within the coverage of the federal tort liability imposed by the Civil

Rights Act. Yet we are clear that the judgment of the district court ought to be affirmed in dismissing the complaint as to these two defendants also, for failure of the complaint to state a claim against them upon which relief could be granted."

Chief Judge Magruder of the Court of Appeals of the First Circuit continues in that opinion with a review of the adoption of the Civil Rights Act in the days of the Reconstruction period following the Civil War. The Court says in regard to the Civil Rights Act, at page 587:

"When courts come to deal with a statute phrased in terms of such vague generality, they are faced with two possible alternatives: (1) They may give effect to the statute in its literal wording, and thus reach results so bizarre and startling that the legislative body would probably be shocked into the prompt passage of amendatory legislation. This seems to be the approach which the Third Circuit intended to take in its opinion in Picking v. Pennsylvania R. Co., 3 Cir., 1945, 151 F.2d 240. (2) The courts may refuse to regard the statute as an isolated phenomenon, sticking out like a sore thumb if given a strict, literal application; and upon the contrary may conceive it to be their duty, in applying the statutory language, to fit the statute as harmoniously as may be into the familiar and generally accepted legal background, and to confine its application, within reason, to those situations which might possibly have had the approval of the Congress if it had specifically adverted to the particular cases, bearing in mind the basic purposes which gave rise to the legislation in the first place. We leave it to others to determine whether such judicial process may fairly be characterized as 'interpretation' of the intent of Congress, as disclosed in the statutory language, or whether it is something else. At any rate, it is a function which courts sometimes feel called upon to exercise and indeed which in many cases they are expected to exercise.

"From the trend of decisions applying this particular statute, we think it no longer appropriate for this court to proceed in accordance with the first of the above alternatives.

"See Tenney v. Brandhove, 1915, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Cobb v. City of Malden, 1 Cir., 1953, 202 F.2d 701; Francis v. Crafts, 1 Cir., 1953, 203 F.2d 809, certiorari denied 1953, 346 U.S. 835, 74 S.Ct. 43 [98 L.Ed. 357]; Wall v. King, 1 Cir., 1953, 206 F.2d 878, certiorari denied 1953, 346 U.S. 915, 74 S.Ct. 275 [98 L.Ed. 411]; Cawley v. Warren, 7 Cir., 1954, 216 F. 2d 74. See also McGuire v. Todd, 5 Cir., 1952, 198 F.2d 60, 63, certiorari denied 1952, 344 U.S. 835, 73 S.Ct. 44, 97 L.Ed. 649."

Chief Judge Magruder in the Francis v. Lyman case, supra, has effectively stated, in the quoted language, the interpretation which this court feels should be given to the Civil Rights Act.

It is the firm conviction of this court that the Act in question was never intended to afford relief to a person in the position of the plaintiff Kenney, under the circumstances set forth in the complaint on file in this cause.

The court is unable to find in any of the allegations of the complaint, as amended, any foundation for any theory that the individuals named acted in the manner alleged, wilfully or maliciously, or for the *purpose* of depriving this plaintiff of the rights, privileges and immunities guaranteed to him by the Constitution and laws of the United States.

■ It is the opinion of this Court that the purpose of the enactment of the Civil Rights Act was not to create

820

a right to civil damages for every error of judgment on the part of judges of state courts or superintendents of state mental institutions, and certainly, as has been frequently stated, it was not intended to afford relief against persons acting in a private capacity.

In reaching its decision in this case, the court is not unmindful of the case of Manning v. Ketcham, 58 F.2d 948, and the case of McShane v. Moldovan, 172 F.2d 1016, 1017, both of which are cases decided by the Court of Appeals for the Sixth Circuit.

The first is a case in which a Kentucky Judge, on his own motion, assumed jurisdiction over a matter of which he did not have *any* jurisdiction under the provisions of the laws of Kentucky.

The McShane case is a case in which the allegation was that the defendants *wilfully* conspired to deprive the plaintiff of the rights, privileges and immunities guaranteed to her by the Constitution and laws of the United States. As was pointed out by Circuit Judge McAllister in his opinion, the allegations of the complaint were—

"That the conduct of apellees was willful and malicious, and designed to deprive her of her rights, privileges, and immunities as secured by the Fourteenth Amendment to the Constitution of the United States."

Because of the facts on which those decisions were based this Court is of the opinion that the cited cases can be distinguished from the instant case.

For the reasons herein stated this Court concludes that plaintiff's complaint as amended does not state a claim, upon which relief could be given, against any of the named defendants. Because of this conclusion it is unnecessary to discuss any of the other grounds for dismissal urged by the defendants. The motions to dismiss filed by each of the defendants are granted. An order may be entered accordingly.