Edward James KENNEY, Jr.,
Appellant,

v.

Honorable Raymond W. FOX,
Appellee.

Edward James KENNEY, Jr.,
Appellant,

v.

Honorable Malcolm K. HATFIELD,
Thomas N. Robinson, Dr. Roy A. Mor-
ter, Dr. Joseph McCarthy, Appellees.

Edward James KENNEY, Jr.,
Appellant,

v.

Joseph J. KILLIAN, Appellee.

Nos. 12581, 12622, 12610.

United States Court of Appeals
Sixth Circuit.

April 19, 1956.

Edward James Kenney, Jr., Benton Harbor, Mich., per se.

Edmund E. Shepherd, Sol. Gen., Lansing, Mich. (Gould Fox, Fox, Fox & Thompson, Kalamazoo, Mich., on the brief), for Raymond W. Fox.

Paul E. Cholette, Grand Rapids, Mich. (Alexander, Cholette, Buchanan, Perkins & Conklin, Grand Rapids, Mich., on the brief), for Joseph J. Killian.

Paul E. Cholette, Grand Rapids, Mich., Charles Gore, Benton Harbor, Mich., Edmund E. Shepherd, Lansing, Mich. (Alexander, Cholette, Buchanan, Perkins & Conklin, Grand Rapids, Mich., Gore &

Williams, Benton Harbor, Mich., Thomas M. Kavanagh, Daniel J. O'Hara, Perry A. Maynard, Lansing, Mich., Roland L. Huff, Kalamazoo, Mich., on the brief), for Malcolm K. Hatfield, Thomas N. Robinson, Dr. Roy A. Morter and Dr. Joseph McCarthy.

Before MARTIN, MILLER and STEWART, Circuit Judges.

MARTIN, Circuit Judge.

These three cases, brought to our court by the same appellant, were argued separately but may be appropriately dealt with in one opinion.

In No. 12,581, the appellant, Edward James Kenney, Jr., an attorney, brought an action for $123,000 damages against Honorable Raymond W. Fox, Judge of Circuit Court of Kalamazoo County, Michigan. He prayed, in the alternative, for a declaratory judgment determining the dismissal by Judge Fox of his action against Dr. Morter and others to be null and void. He based the jurisdiction of his cause of action upon Title 28, U.S.C.A. § 1343, as amended, and upon Title 28, U.S.C.A. § 2201, as amended. His claim for recovery was grounded upon the federal civil rights statute, 42 U.S.C.A. § 1983, formerly 8 U.S.C.A. § 43, which provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In a well considered opinion, Kenney v. Fox, D.C.W.D.Mich., 132 F.Supp. 305, United States District Judge Starr sustained the motion to dismiss filed by Judge Fox. After a painstaking review of the authorities, the district judge summarized his reasons for dismissing Kenney's action to be that Judge Fox, as a state circuit court judge, had jurisdiction and in dismissing Kenney's state court action was acting in his official judicial capacity; that he did not exceed his authority and was not acting in bad faith or motivated by malice, prejudice, bias, partiality, undue influence, or from other improper motives; that Kenney, as a dissatisfied litigant, was in reality seeking a federal court review of a state court decision; that the complaint did not state facts which, under the Civil Rights Act, would entitle him to relief against the judge; and that the complaint failed to state a cause of action upon which relief could be granted. The facts are sufficiently detailed in the aforementioned opinion of the United States District Judge, reported in D.C., 132 F.Supp. 305, and will not be repeated here. The law of the case will be discussed later in this opinion.

In No. 12,622, the appellant, Edward James Kenney, Jr., brought an action, based on 42 U.S.C.A. § 1983 [formerly 8 U.S.C.A. § 43], on 28 U.S.C.A. § 1343, and under certain statutes of Michigan [12 M.S.A., section 14.801 et seq., Comp. Laws of Mich.1948, § 330.1 et seq.] for deprivation of his alleged civil rights by his confinement in a Michigan mental institution. He named as defendants the Honorable Malcolm A. Hatfield, Probate Court Judge of Berrien County, Michigan; Thomas N. Robinson, an attorney on whose alleged recommendation the commitment of plaintiff was made; Dr. Roy A. Morter, Medical Superintendent of the Kalamazoo State Hospital; and Dr. Joseph McCarthy, a physician on the staff of that state institution. The basic allegation of appellant was that each of the defendants had participated in a series of acts which caused the confinement of plaintiff in the state mental hospital and his continued detention there.

The district court sustained the motions of all the defendants to dismiss for the reasons stated by District Judge Kent in his carefully prepared opinion in Kenney v. Hatfield, D.C.W.D.Mich., 132 F.Supp. 814. The facts, being adequately stated there, will not be repeated here. We pause to say that we think the district judge correctly distinguished the

opinions of this court in McShane v. Moldovan, 6 Cir., 172 F.2d 1016, 1017; and Manning v. Ketcham, 6 Cir., 58 F.2d 948; 132 F.Supp. 820. We are in accord with his reasoning, 132 F.Supp. 817, that Robinson, a private practitioner, in preparing the papers filed as the first step in the proceedings resulting in Kenney's commitment to the Kalamazoo State Hospital, was not amenable to an action based on the civil rights statute. See Whittington v. Johnston, 5 Cir., 201 F.2d 810, 811, cited in the opinion of the United States District Judge.

■ We agree also with the reasoning of the district judge concerning the non-liability of the two doctors. As stated in his opinion, the institutional doctors should not be expected or even permitted to go behind a court order of commitment of a person to a state mental hospital where, on its face, the order appears to be valid. Indeed, a Michigan statute, section 14.805(10), Michigan Statutes Annotated, Comp.Laws 1948, § 330.15, provides, in part: "The order for admission shall be full and sufficient authority and protection to the medical superintendent, or the person acting as such in his absence, for receiving and detaining in such institution the person named therein, and he shall not be liable to any suit or action on account thereof." 132 F.Supp. 818.

We are in accord also with the dismissal of the case as to the state probate judge, but will reserve discussion of the question of judicial immunity to the latter part of the opinion.

In No. 12,610, the appellant, Edward James Kenney, Jr., brought an action based upon the civil rights statute, 42 U.S.C.A. § 1983, against Joseph E. Killian, prosecuting attorney of Berrien County, Michigan, for alleged false imprisonment and malicious prosecution upon allegations that the defendant official caused the plaintiff to be confined in a county jail for about forty hours, in violation of his claimed civil rights. The district court held that the action was barred by the Michigan two-year statute of limitations; that the complaint failed to state a claim upon which relief could be granted; and that the defendant was immune from civil liability to the plaintiff under the civil rights statute. District Judge Starr wrote a full-dress opinion, Kenney v. Killian, D.C., 133 F.Supp. 571, in which he set forth the facts, in view of which we consider it unnecessary to restate them here.

■ We pretermit decision upon whether Kenney's action is barred by the statute of limitations, but uphold the dismissal of the suit upon the basis of no cause of action. We think the district judge has supplied in his opinion compelling reasons for his dismissal of Kenney's action against the prosecuting attorney, who was acting in his official capacity in connection with all actions of which appellant complains. A prosecuting attorney is a quasi-judicial officer and enjoys the same immunity from a civil action for damages as that which protects a judge acting within his jurisdiction over the parties and the subject matter of the litigation. Yaselli v. Goff, 2 Cir., 12 F.2d 396, 404, 56 A.L.R. 1239; Cawley v. Warren, 7 Cir., 216 F.2d 74, 76; Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838.

We shall now discuss, rather extensively, the important doctrine of judicial immunity and the question of whether it has been abrogated or impaired by virtue of the Civil Rights Act in an action brought under that statute.

The leading American authority upon the subject of judicial immunity is the constantly cited case of Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646, in which Mr. Justice Field wrote the opinion of the Supreme Court nearly ninety years ago. In holding that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and alleged to have been done maliciously or corruptly, the eminent jurist said: "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly

no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons. [13 Wall. 351, 352, 80 U. S. 351, 352, 20 L.Ed. 646]. * * * The exemption of judges of the superior courts of record from liability to civil suit for their judicial acts existing when there is jurisdiction of the subject-matter, though irregularity and error attend the exercise of the jurisdiction, the exemption cannot be affected by any consideration of the motives with which the acts are done. The allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort. But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed." 13 Wall. 354, 80 U.S. 354.

In Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142, the Supreme Court adhered to the doctrine of Bradley v. Fisher, supra, and held in an opinion prepared by Mr. Justice Holmes that the immunity of judges from civil actions, for damages for their official acts, is so firmly established in American jurisprudence that it would be considered to have been carried into the Philippine Islands when American courts were established there.

The lower courts of the United States have followed and applied the principles of Bradley v. Fisher as to judicial immunity in the following, among other cases: Brictson v. Woodrough, 8 Cir., 164 F.2d 107, 109; Yaselli v. Goff, 2 Cir., 12 F.2d 396, 400, 56 A.L.R. 1239; Spruill v. O'Toole, 64 App.D.C. 85, 74 F.

2d 559; Philbrook v. Newman, C.C.N.D. Cal., 85 F. 139, 144; English v. Ralston, C.C.E.D.Pa., 112 F. 272.

Without citing the case, the doctrine of Bradley v. Fisher was applied in O'Connell v. Mason, 1 Cir., 132 F. 245, and in Fletcher v. Wheat, 69 App.D.C. 259, 100 F.2d 432. Other federal cases adhering to the principle, but also dealing with the effect of a civil rights statute upon judicial immunity, will be presently discussed. But, before entering upon such discussion, we shall glance at a Michigan authority. In Curnow v. Kessler, 110 Mich. 10, 14, 67 N.W. 982, 984, it was said: "It is indispensable to the administration of justice that a judge or other judicial officer, who acts within the scope of his jurisdiction, may act freely, without any fear of being held responsible in a civil action, or having his motives brought in question by one injuriously affected by his judgments. This immunity is uniformly held not to be affected by the motives with which it is alleged that the judicial officer has performed his duty. If the officer be in fact corrupt, the public has its remedy, but the defeated suitor cannot be permitted to obtain redress against the judge by alleging that the judgment against him was the result of corrupt or malicious motives. See Bradley v. Fisher, 13 Wall. 335 [20 L.Ed. 646]; Mechem, Pub. Off., secs. 619–621."

We are of firm opinion that the common law rule of immunity of a judicial officer for acts done in the exercise of his judicial function, where he has jurisdiction over both parties and the subject matter, has not been abrogated by the Civil Rights Act. This has been held directly by three Courts of Appeals of the United States. Tate v. Arnold, 8 Cir., 223 F.2d 782; Cawley v. Warren, 7 Cir., 216 F.2d 74; Francis v. Crafts, 1 Cir., 203 F.2d 809.

In Tate v. Arnold, supra, 223 F.2d at page 785, it was asserted that courts generally have refused to accept as correct the holding in Picking v. Penn. R. Co., 3 Cir., 151 F.2d 240, 250, wherein it was held that Congress, by enacting the Civil Rights Act, *sub judice*, intended to abrogate the immunity of judicial officers from civil actions. It was pointed out by Judge Woodrough that the courts which have rejected the authority of the Picking case have based their reasoning primarily upon the decision of the Supreme Court in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, which was announced several years after the pronouncements of the Court of Appeals for the Third Circuit in the Picking case.

In Tenney v. Brandhove, supra, the Supreme Court held that when a legislative committee was acting within a field in which it had power to act, the civil rights statutes impose no civil liability upon the legislators for conduct charged to have stemmed from improper motives. In Tate v. Arnold, supra, attention was called to the fact that the United States District Court for Western Pennsylvania had held the decision in the Picking case to be no longer binding in that circuit. Ginsburg v. Stern, D.C., 125 F.Supp. 596; United States ex rel. Peters v. Carson, D.C., 126 F.Supp. 137. The opinions in both these cases were written in scholarly but vigorous fashion by Chief District Judge Gourley. In Ginsburg v. Stern, 125 F.Supp. at pages 601–602, he said: "It would appear incongruous and contradictory to the doctrine of judicial independence, to hold that judicial officers of a state stand in a less favorable position than do state legislators, in respect to immunity from civil liability for acts done in their official capacity.

"I have no doubt that the Third Circuit would no longer feel obliged, as it did in the Picking case, to read the Civil Rights Act in such literal and unqualified manner as to impose a liability for damages upon a state judicial officer for acts done in the exercise of his judicial function.

"It is axiomatic that the same immunity which applies to state legislators in the performance of their legislative duties would have application to the official acts of judges." Francis v.

Crafts, 1 Cir., 203 F.2d 809, 811, and Cobb v. City of Malden, 1 Cir., 202 F.2d 701, were cited. The same language was used in United States ex rel. Peters v. Carson, 126 F.Supp. at page 142.

But, as to Chief Judge Gourley's prediction concerning the probable rejection by the Court of Appeals for the Third Circuit of its opinion in the Picking case, in view of the Supreme Court's decision in Tenney v. Brandhove, supra, see Ginsburg v. Stern, 3 Cir., 225 F.2d 245. However this may be, we are not in accord with the holding in the Picking case that the Civil Rights Act abrogated the doctrine of judicial immunity. The opinion in McShane v. Moldovan, 6 Cir., 172 F.2d 1016, in its reference to the Picking opinion, did not constitute a holding grounded upon acceptance of its interpretation of the Civil Rights Act. The important question for decision in the McShane case was, as stated by the court, 172 F.2d at page 1019, "whether the allegations of the complaint disclosed that appellees, in their alleged conduct, acted 'under color of law' ". The Picking opinion was cited as bearing on that question, not on the question of judicial immunity. Although a justice of the peace was one of the defendants in the McShane case, the case involved an alleged conspiracy among the justice of the peace, a complaining witness, a constable and others. The defendants were considered as a group of conspirators, with no separate consideration being given to them individually. The question of judicial immunity was not discussed; apparently it was not raised by the defendant justice of the peace. In any event, any implied ruling on the question of judicial immunity in a case not involving a conspiracy must yield to the later ruling of the Supreme Court in Tenney v. Brandhove, supra.

In Francis v. Crafts, 1 Cir., 203 F. 2d 809, 811, 812, it was held that the Civil Rights Act, 8 U.S.C.A., section 43, has no application affecting the immunity of judges from civil liability for acts done in the course of their official func-

tion. Chief Judge Magruder pointed out that his court, in Cobb v. City of Malden, 1 Cir., 202 F.2d 701, had said that "fortunately" the decision of the Supreme Court in Tenney v. Brandhove, supra, had relieved it of the necessity of giving the Civil Rights Act the awesome and unqualified interpretation which its sweeping language seemed to require. He added that the highest court had held that the broadly expressed terms of the Civil Rights Act could not have been intended to deprive state legislators of their preexisting and well established complete immunity from civil liability for official acts done within the sphere of legislative activity.

Before concluding his opinion, Judge Magruder stated that the Picking case had been decided in 1945, "without benefit of the illumination and compelling analogy to be found in the opinion of the Supreme Court in Tenney v. Brandhove, supra, which came down several years later." He added: "In view of the discussion in the latter case, we have no doubt that the Third Circuit would no longer feel obliged, as it did in the Picking case, to read the Civil Rights Act in such literal and unqualified manner as to impose a liability for damages upon a state judicial officer for acts done in the exercise of his judicial function. Certainly it would be absurd to hold, in the application of the Civil Rights Act, that judicial officers of a state stand in any less favorable position than do state legislators, in respect to immunity from civil liability for acts done in their official capacity."

The Court of Appeals for the Seventh Circuit, in Cawley v. Warren, 216 F.2d 74, affirmed the dismissal of a complaint brought under the Civil Rights Act against a state prosecuting attorney, his first assistant, and the foreman of a state grand jury, accused of wrongfully procuring the indictment of the plaintiff in an Illinois county, upon the ground that, as "judicial officers", they were protected by the same rule of immunity which is applicable to judges. Bradley v. Fisher, supra; Alzua v. Johnson, su-

pra; Francis v. Crafts, supra, and Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838, were cited as authorities.

For the foregoing reasons, the judgment entered by the district court in each of these three cases is affirmed.