Jean **WILLIAMSON**, Plaintiff,

v.

Emory **WAUGH**, Defendant.

Civ. A. No. 919.

United States District Court
S. D. West Virginia, at Huntington.
March 20, 1958.

R. A. Woodall, J. J. N. Quinlan, J. E. Nelson, Huntington, W. Va., for plaintiff.

Maxwell W. Flesher, Edward H. Greene, Claude M. Morgan, Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action for damages under the Civil Rights Act, 42 U.S.C.A. § 1983. The acton was originally instituted against Emory Waugh and Alma Cyrus, but only Waugh has been served with process, the Marshal's return indicating that Alma Cyrus was not found in this District. Defendant Waugh has made motions for judgment and dismissal. Taking into consideration all the allegations of the complaint, and taking as true all material facts well pleaded, I find that this action must be dismissed for the following reasons: First, the complaint fails to state a cause of action cognizable

by this Court under the Civil Rights Act, because no deprivation of Civil Rights is involved. Second, the acts complained of were done by defendant as a Justice of the Peace for Cabell County, West Virginia, as a part of his official judicial duties, for which he is immune from civil liability.

The complaint alleges that defendant issued a warrant for plaintiff's arrest on a charge of issuing a check in the amount of $10 with insufficient funds in the bank to pay same. The Court will take judicial knowledge that West Virginia Code, 61–3–39 makes the issuance of a check under the amount of $20 with knowledge that there are insufficient funds in the bank to cover it, a misdemeanor and further provides that justices of the peace shall have jurisdiction over such misdemeanors. Plaintiff asserts that Alma Cyrus, the operator of a retailing establishment, deposited in the regular course of business a check bearing the name of Jean Williamson, the plaintiff, as maker. The bank refused payment thereon, and attached the usual type of notation indicating the signature was not genuine. The check and attached notation were presented to the defendant by Alma Cyrus, who signed a blank form which, when properly filled out, is commonly called a bad check information or complaint. Defendant is charged with thereafter filling in the blanks of that signed form, making the paper a complaint against the purported maker of the check, Jean Williamson. Thereupon, defendant issued a warrant for plaintiff's arrest. Plaintiff asserts that the check was a forgery. In response to the warrant, plaintiff and her counsel went to defendant's office, where plaintiff gave bond for her appearance at a later date. Upon the return date of the bond, plaintiff again appeared before defendant with her counsel, but was informed that defendant was ill and that the warrant against her, along with those against other persons, had been transferred to another Justice of the Peace in the same county. The latter informed plaintiff

that the warrant had been "paid off," so no further action was taken on the warrant.

Plaintiff, a school teacher in Cabell County, West Virginia, alleges that defendant's actions were done with malice and avarice, under color of state law, causing her expense and embarrassment, and have unlawfully subjected her to a deprivation of her Constitutional rights, privileges and immunities. The complaint does not allege any discrimination between persons or classes of persons, nor does it allege any violence. There is no diversity of citizenship alleged.

Title 42 U.S.C.A. § 1983 reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In response to a request of the Court, counsel for the plaintiff have set forth in their brief the precise "rights, privileges, or immunities" of which plaintiff claims to have been deprived. It is plaintiff's contention that:

"Jean Williamson was deprived of her liberty without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, in that the said warrant described in the petition in this cause was issued without probable cause, and arrest made and recognizance required, in that no complaint was made accusing her of the crime of uttering or issuing a 'bad check' in violation of the laws of the State of West Virginia, but her name was purposely placed on the said warrant by the said Justice in order to insure to the complaining witness, the proprietor of a retail

establishment, the collection of a debt due and owing the said proprietor of the said retail establishment, Alma Cyrus, which debt, of course, Jean Williamson would be likely to discharge herself rather than undergo further shame, disgrace, humiliation, and embarrassment."

■ Under the authorities which will be presently discussed, I hold that these facts and allegations do not give rise to a cause of action under the Civil Rights Act. Plaintiff complains of being arrested on a charge involving a check which was forged. The charges were dismissed before a trial could be had, so that plaintiff was only required to give a recognizance, or bond; but even if she had been required to stand trial, no action would lie under the Civil Rights Act on those facts alone. As stated in Dunn v. Gazzola, 1 Cir., 216 F.2d 709, 711:

"Assuming that the plaintiff was not guilty of the offense charged, her subjection to the necessity of having to stand trial on an unfounded charge did not alone constitute a deprivation of any right, etc., secured by the Constitution of the United States."

■ The complaint goes further here, alleging more than an honest mistake by the defendant, but charging that his acts were done with malice and avarice, willfully and purposefully depriving plaintiff of her constitutional rights. However, her bare conclusionary allegations, unsupported in the facts alleged, will not protect the complaint from a motion to dismiss; only material facts and not the unsupported conclusions of the pleader are considered in the light most favorable to the plaintiff. Dunn v. Gazzola, supra; Agnew v. City of Compton, 9 Cir., 239 F.2d 226; McGuire v. Todd, 5 Cir., 198 F.2d 60, 63, certiorari denied 344 U.S. 835, 73 S.Ct. 44, 97 L.Ed. 649; Ortega v. Ragen, 7 Cir., 216 F.2d 561, certiorari denied 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268. As stated in Yglesias v. Gulfstream Park Racing Ass'n, 5 Cir., 201 F.2d 817, 818, certiorari denied 345 U.S. 993, 73 S.Ct. 1132, 97 L.Ed. 1400:

"What we have in the substantive counts now before us is essentially a charge of false imprisonment, and perhaps malicious prosecution, to which has been added the factually unsupported allegation that plaintiff was thereby deprived of the right to due process, and other rights secured by the Fourteenth Amendment. It may be that the complaint alleges facts sufficient to support an action for false arrest or malicious prosecution. But to show that defendant deprived plaintiff of rights and immunities secured by the Fourteenth Amendment, or caused it to be done, or conspired to that end, plaintiff relies upon bare generalities and conclusions, unsupported by factual allegations. If this is sufficient, then every state court case of false imprisonment may be brought within federal jurisdiction by the mere unsupported assertion that as a consequence of such false imprisonment the plaintiff was deprived of due process, or of other rights secured by the Fourteenth Amendment. The decisions are to the contrary. It has frequently been held, and the rule is recognized in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, 13 A.L.R.2d 383, that where the alleged claim under the Constitution or federal statutes clearly appears to be colorable, or made solely for the purpose of creating federal jurisdiction over what would otherwise be an action to vindicate a right arising only under state law, and no substantial facts establishing federal jurisdiction are alleged, mere conclusions asserting the violation of a constitutional right are insufficient. Lyons v. Weltmer, 4 Cir., 174 F.2d 473; Taylor v. Smith, 7 Cir., 167 F.2d 797, 12 A.L.R.2d 1; note 14 A.L.R. 2d Text page 1100, et seq., McGuire v. Todd, 5 Cir., 198 F.2d 60, and the many cases cited in Note 5 to that

opinion, particularly Givens v. Moll, 5 Cir., 177 F.2d 765; Bottone v. Lindsley, 10 Cir., 170 F.2d 705; Moffett v. Commerce Trust Co., 8 Cir., 187 F.2d 242. See also McCartney v. State of West Virginia, 4 Cir., 156 F.2d. 739, * * *."

In the light of the above decisions from various federal courts, as well as decisions from district courts too numerous to mention, it is clear that the facts alleged in the complaint here do not support plaintiff's conclusions that she has been deprived of her civil rights. Indeed, as stated in Agnew v. City of Compton, 9 Cir., 239 F.2d 226, 231, the facts alleged belie such a conclusion.

"The purpose of the arrest was to enforce a valid ordinance [here a state statute]. The means employed were reasonable. No violence or unusual indignity resulted. There were no overtones of discrimination. Due process was accorded in the prompt filing of charges and release on bail. The charges were dropped without occasioning appellant additional personal inconvenience.

"In what is said above, we do not mean to hold that a cause of action may never be stated where false arrest and imprisonment are .involved. As before indicated, such a cause of action may be stated where it is alleged that the arrest was for the purpose of discriminating between persons or classes of persons. There is here no such allegation.

"Such a complaint has also been held sufficient where it was alleged that the trial was fraudulently conducted. McShane v. Moldovan, 6 Cir., 172 F.2d 1016. A like result has been reached where there were allegations as to unnecessary violence, refusal to permit the arrested person to consult an attorney, refusal to inform of the charge, and personal indignities. Davis v. Turner, 5 Cir., 197 F.2d 847. No such showing is made in this complaint." 239 F.2d at pages 231–232.

Plaintiff relies on four cases to show this Court's jurisdiction of this case. All are readily distinguishable on their facts, and are not authoritative precedents on the point of law involved here. The first case cited is Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, rehearing denied, 3 Cir., 152 F.2d 753, certiorari denied, 332 U.S. 776, 68 S.Ct. 38, 92 L.Ed. 361, rehearing denied, 332 U.S. 821, 68 S.Ct. 143, 92 L.Ed. 397. That 1945 decision has received much attention of the federal courts. In Agnew v. City of Compton, supra, footnote 13, it is pointed out that the cause of action pertaining to false arrest in the Picking case was based upon diversity of citizenship, and not upon asserted violations of the Civil Rights Act. As noted earlier, in the case at bar there is no diversity alleged. The Picking case is further distinguishable from this case in that in the Picking complaint there were allegations that undue force had been used in arresting the plaintiffs, inflicting physical injuries upon them; that following arrest they were imprisoned in a county jail and there assaulted and injured and subjected to physical indignities; that one plaintiff was robbed of $10; and primarily, the case was based on the allegation that defendant had deprived plaintiffs their constitutional rights by denying them a prompt hearing after arrest. The court held that these allegations were sufficient to state a cause of action under the Civil Rights Act, but it is manifestly clear that the facts alleged there are quite different from the allegations here. And for a criticism of the Picking case, see Francis v. Lyman, 1 Cir., 216 F.2d 583, 587, where the court indicates that the trend of decisions applying the Civil Rights Act is such that the First Circuit felt it inappropriate to follow the approach of the Picking decision.

Plaintiff also cites the case of McShane v. Moldovan, 6 Cir., 172 F.2d 1016. As noted in the quotation above from Agnew v. City of Compton, that case held a complaint to be sufficient where it was alleged that the trial was fraudu-

lently conducted, but in the instant case trial stage was never reached. The court in the McShane case relied heavily upon the Picking case, and is subject to the same criticism.

Plaintiff next cites Watkins v. Oaklawn Jockey Club, 8 Cir., 183 F.2d 440, 442, which affirmed a dismissal of an action under the Civil Rights Act, on the ground that defendants were not acting "under color of law" in ejecting plaintiff from a race track. This case has no applicability here. The last case cited by plaintiff is Dye v. Cox, U.S.D.C. E.D.Va., 125 F.Supp. 714. In that case, a deputy sheriff was charged with arresting the plaintiff without cause, locking him in the county jail and keeping him there over night, refusing him opportunity to make bail, and the complaint further accused the deputy of pommelling plaintiff with the metal end of a broom, to plaintiff's serious injury, while confined in a cell. It is readily observed that these facts are of an entirely different nature from those in the complaint under scrutiny, but even with those serious charges, Judge Bryan held the action would have to be dismissed as not coming within the purview of 42 U.S.C.A. § 1983 unless plaintiff could allege facts constituting a deprivation of constitutional rights.

The facts averred in plaintiff's complaint here are insufficient in law to invoke the Civil Rights Act, under the above authorities. But even if the acts attributed to defendant did constitute an impingement upon plaintiff's civil rights, or if plaintiff were to amend her complaint to include other facts establishing a clear case under the Act, she is faced with the insurmountable obstacle of defendant's judicial immunity.

■ One of the basic tenets of English and American jurisprudence is the doctrine of judicial immunity. Since the case of Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646, it has been a time-honored rule that a judge cannot be subjected to civil liability for the performance of his official duties, however erroneous or injurious the judicial act may be. This rule came to us from the old English common law, and the Supreme Court gives the reason for the rule as follows:

"For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful." 13 Wall. at page 347. 80 U.S. at page 347.

Four Courts of Appeals of the United States have held directly that this immunity of a judicial officer for acts done in the exercise of his judicial function, where he has jurisdiction over both parties and subject matter, has not been abrogated by the Civil Rights Act. Kenney v. Fox, 6 Cir., 232 F.2d 288, 292; Tate v. Arnold, 8 Cir., 223 F.2d 782; Cawley v. Warren, 7 Cir., 216 F.2d 74; Francis v. Crafts, 1 Cir., 203 F.2d 809. The latest case so holding is Guiksa v. City of Mansfield, 6 Cir., 250 F.2d 700. Tate v. Arnold, supra, extended this judicial immunity to a justice of the peace.

■ While justice of the peace courts in West Virginia are not courts of record, the West Virginia Supreme Court of Appeals established the rule in 1873 that judicial immunity extends to both superior and inferior courts of this state. In the case of Fausler v. Minear, 6 W.Va. 486, 492, the court quotes with approval from 2 Hilliard on Torts, pp. 171, 172, concerning this judicial immunity: "these rules extend as well to a justice of the peace as to any other judicial officer, acting within his jurisdiction, in a judicial capacity." There can be no doubt that defendant here was acting judicially under the authority vested in him by West Virginia Code, 61-3-39, in

issuing the warrant for plaintiff's arrest. This action, therefore, will not lie.

The complaint in this action will be dismissed. Counsel may prepare an order to that effect.