Dolly JONES, individually and as Administratrix for Elmer Combs, Plaintiff,

v.

Frederic GEORGE, Joseph McCoy, Joe Prudich, Gary Shope, Bobby Leverette, Richard Mohn, Paul Kirby, John Massie, John D. Rockefeller, IV, Officer Isenhower, James P. Jarrett, Linda Meckfessel, Janet M. Raider, Norman E. Wood, George P. Naum, all of whom are sued in both their individual capacities and their official capacities as employees or officers of the State of West Virginia, Defendants.

Civ. A. No. 79–3147.

United States District Court,
S. D. West Virginia,
Huntington Division.

March 12, 1982.

James B. McIntyre, James M. Haviland, Charleston, W. Va., for plaintiff.

Edward W. Eardley, Chauncey Browning, Jr., Atty. Gen., David E. Cleek, Asst. Atty. Gen., Charleston, W. Va., for defendants.

## MEMORANDUM OPINION AND ORDER

STAKER, District Judge.

This case, involving claims of the false arrest and false imprisonment of, the denial of adequate medical care to, and the wrongful death of, a West Virginia State Penitentiary inmate, is one of both legal and factual complexity. Joined as defendants herein are the Governor of West Virginia; Assistant Attorneys General for West Virginia; the Commissioner and an Official of the West Virginia Department of Corrections; the members of the West Virginia Board of Probation and Parole; the Warden and a former Warden of the West Virginia State Penitentiary; and other employees of the Penitentiary, including two physicians, a paramedic, a records keeper and a security officer.[1] The original complaint, filed in this case on May 26, 1979, has been superseded by an amended complaint filed on June 15, 1981.[2]

Now before the court are motions, filed by different defendants pursuant to Rule 12(b), Federal Rules of Civil Procedure, to dismiss the complaint, along with memoranda in support thereof and in opposition thereto.[3] Those defendants having filed such a motion are: Frederic George and Joe Prudich (Attorney General's Office); Joseph McCoy and Gary Shope (Department of Corrections); Bobby Leverette and Richard Mohn (Wardens); John D. Rockefeller, IV (Governor); and James P. Jarrett, Linda Meckfessel and Janet M. Raider (Board of Probation and Parole).[4] In ruling on these motions, the pleadings, insofar as such is required,[5] will be construed in the light

---

1. These categorizations reflect the status of each defendant at the time of the filing of the lawsuit, as reflected by the original complaint. The court notes that these indications of status have not been changed, with respect to any defendant, in the amended complaint.

2. Plaintiff states, in the "Introduction" paragraph of her amended complaint, that "[e]xcept as expressly stated, plaintiff does not mean to abandon any claims asserted in the original Complaint." The court assumes that this statement is made for purposes of explanation and not for purposes of incorporation by reference, and that all presently-asserted claims appear within the amended complaint.

 Whenever reference is made in this opinion to the complaint, the subject is the amended complaint unless otherwise noted.

3. All such motions and memoranda were filed prior to plaintiff's submission of her amended complaint. However, by letter of June 18, 1981, defendants George, Prudich, McCoy, Shope, Leverette, Mohn, Rockefeller, Jarrett, Meckfessel and Raider, by counsel, informed the court that they chose to stand on their motions as previously filed rather than presenting material responsive specifically to the amended complaint. The court consented to this course of action, and plaintiff has represented to the court that she has no objection to same.

 Of course, the court will not consider those portions of the defendants' motions or the parties' memoranda rendered irrelevant by the amended complaint.

4. The remaining defendants—Kirby (paramedic); Massie (records keeper); Isenhower (security officer); and Naum and Wood (physicians)—have all filed answers to both the original and amended complaints herein.

5. Plaintiff, in her memo, points out that:

 [A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Williamson v. Waugh*, 160 F.Supp. 72 (S.D.W.Va.1958).

## I. Prefatory Material

### A. Facts

The factual situation underlying this complaint is, to say the least, unusual, not well-defined and in dispute in minor and major particulars. Even though the apparent discrepancies and gaps are in large part irrelevant for purposes of considering the within motions, for reasons of explanation, the court now presents what it perceives the parties' factual positions to be.

*According to the plaintiff:*

1. Elmer Combs (hereafter, Combs or decedent) had been incarcerated for several years, off-and-on from 1949 to 1969, in the West Virginia State Penitentiary at Moundsville;

2. By early June of 1969, all prior convictions rendered against Combs had been voided, and he was sometime thereafter released from custody;

3. After June 6, 1969, and throughout the remainder of his lifetime, Combs was not charged with or convicted of any criminal behavior whatsoever, and there were no criminal charges pending against him;

4. From approximately August, 1975 to August 9, 1978, Combs resided with his mother and stepfather in Logan County, West Virginia;

5. On or about August 9, 1978, Combs was arrested without probable cause and later taken to the West Virginia State Penitentiary, where he was once again incarcerated, plaintiff asserts unlawfully;

6. From at least August 16, 1978 until approximately January 8, 1979, Combs' family devoted their energies to attempting to secure his release from custody. Toward this end, they were in contact with several of the named defendants, including George, Prudich, Shope and Rockefeller. Combs' family was assured that the matter was being looked into as expeditiously as possible;

7. On or about January 8, 1979, while in solitary confinement at the West Virginia State Penitentiary, Combs died.

*According to the defendants:*

1. In April, 1970, West Virginia State Penitentiary inmate Elmer Combs was transferred from that facility to Huntington State Hospital, Huntington, West Virginia, for mental health treatment and care;

2. Sometime around mid-1975, Combs brought an action in the Circuit Court of Cabell County, West Virginia, alleging impropriety in his commitment to Huntington State Hospital and seeking release therefrom;

3. The Circuit Court of Cabell County, Robert C. Conaty, J., sustained Combs' request for relief and ordered his release from Huntington State Hospital. This release was effected sometime around mid-1975;

4. For reasons not known to the State, Combs was not, upon his release from Huntington State, immediately returned to the West Virginia State Penitentiary to continue serving his sentence of incarceration;

5. On or about August 9, 1978, at the behest of the Office of the Attorney Gener-

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Plaintiff is reminded, however, that this very valid statement of law is not a *per se* rule. The courts are not required to concoct and muse over *every possible* fact situation which a complaint's allegations *might* conceivably entail. If we were, the Federal Rules of Civil Procedure regarding pleadings—which admittedly are and should be read quite liberally in favor of pleaders—would be nullified. The more general a complaint were pleaded, the more likely its chances of surviving a dismissal motion would be! The pleading Rules are broadly interpreted, yes—but they are to be complied with and not ignored.

*Williamson v. Waugh*, 160 F.Supp. 72 (S.D. W.Va.1958) instructs at 74 that:

[B]are conclusory allegations, unsupported in the facts alleged, will not protect the complaint from a motion to dismiss; only material facts and not the unsupported conclusions of the pleader are considered in the light most favorable to the plaintiff.

al for the State of West Virginia, Combs was arrested in Logan County, West Virginia, and later transported to Moundsville, where he was reincarcerated to serve that portion of his sentence remaining unserved by him;

6. Certain contacts were made by Combs' family to some of the named defendants regarding Combs' situation during the approximate period August 1978–January 1979;

7. On or about January 8, 1979, while still incarcerated, defendants assert lawfully, at Moundsville, Combs committed suicide.

### B. Claims and Jurisdiction

The complaint alleges that:

This Court's jurisdiction exists pursuant to 28 U.S.C. § 1343(3) [6] and (4) [7] and 28 U.S.C. § 1331. [8] This is a civil action for damages brought pursuant to 42 U.S.C. 1983 [9] to redress the deprivations, under color of state law, of rights secured [by] the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States. Plaintiff

6. 28 U.S.C. § 1343(3), now called 28 U.S.C. § 1343(a)(3), provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

> To redress the deprivation, under color of any state law or statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

7. 28 U.S.C. § 1343(4), now called 28 U.S.C. § 1343(a)(4), provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

> To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

8. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

also invokes the pendent jurisdiction of this Court with respect to state law claims. . . . The damages sustained by the plaintiff exceed[ ] $10,000.00. Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. § 2201–2202.

(Complaint, Paragraph 1)

The complaint also lists six "causes of action," each in a separate paragraph. Those paragraphs, along with some accompanying explanatory language, appear to be alleging the following claims against the following defendants: [10]

Under 42 U.S.C. § 1983
Jurisdiction: 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), 1331

| | Claim | Substantive Law | Defendants Charged |
|---|---|---|---|
| 1). | Decedent was falsely arrested and imprisoned. | U.S. Const., Amendments 1, 4, 5, 6, 7, 8, 9 and 14 | George, McCoy, Prudich, Shope, Leverette, Mohn, Massie, Rockefeller, Jarrett, Meekfessel, Raider |
| 2). | Decedent, once incarcerated received inadequate medical care. Defendants were deliberately indifferent to decedent's "well-known medical needs," said needs resulting from his mental condition. | U.S. Const., Amendments 1, 5, 8 and 14 | Leverette, Mohn, Kirby, Wood, Naum |

9. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

10. Because of certain vagueries and inconsistencies within the complaint, and inconsistencies between the complaint and plaintiff's memorandum, the court has not relied wholly on the paragraphs styled "causes of action" as a basis for stating what plaintiff is about herein. Rather, all material filed by plaintiff has been reviewed for this purpose. Admittedly, the court has made some assumptions in this endeavor; if any of these are in error, the parties are invited to inform the court via the method described in fn. 12, infra.

Under 42 U.S.C. § 1983
Jurisdiction: 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), 1331

| | Claim | Substantive Law | Defendants Charged |
|---|---|---|---|
| 3). | Decedent, once incarcerated received inadequate protection from harm (i.e., decedent's demise was wrongful death). | U.S. Const., Amendments 1, 5, 8 and 14 | All defendants |

Under West Virginia Law (Jurisdiction: pendent)

| | Claim | Substantive Law | Defendants Charged |
|---|---|---|---|
| 4). | Decedent was falsely arrested and imprisoned. | Common Law | All defendants (Complaint, ¶ 26) |
| 5). | Decedent was the victim of medical malpractice. | Common Law | Wood, Naum |
| 6). | Decedent, once incarcerated, received inadequate protection from harm (i.e., decedent's demise was wrongful death). | W.Va Code §§ 55-7-5, et seq. | Leverette, Mohn, Kirby |

Plaintiff seeks the following relief:

Compensatory Damages:

1. For decedent's
 — loss of freedom
 — physical discomfort and inconvenience
 — physical illness or injury
 — loss of company of his family
 — mental pain, suffering, anguish and humiliation
 — harm to his reputation[11]

2. For decedent's family's
 — sorrow, mental anguish, emotional and mental distress
 — loss of decedent's solace, including society, companionship, comfort, guidance, kindly offices and advice
 — loss of decedent's reasonably expected income, services, protection, care and assistance
 — expenses in connection with death and funeral of decedent

## Punitive Damages:

Stated basis: All actions alleged were done with the actual knowledge that decedent's rights were being violated; defendants were oppressive, malicious and grossly negligent; defendant's conduct was willful and wanton; defendants had a reckless disregard for decedent's civil rights.

## Declaratory Relief:

Stated basis: 28 U.S.C. §§ 2201, 2202, seeking adjudication that defendants unlawfully arrested and/or incarcerated decedent; and, that once decedent was incarcer-

ated, that defendants did not provide him with adequate treatment or protection.

## Attorney Fees and Costs:

Stated basis: 42 U.S.C. § 1988.

### C. Relief Sought by the within Motions to Dismiss

While the motions are presented in a somewhat disjointed fashion, the relief they all basically seek is:

1. The dismissal of all defendants in their official capacities;

2. The dismissal of claims made pursuant to 42 U.S.C. § 1983;

3. The dismissal of state law claims made pursuant to this court's pendent jurisdiction.[12]

## II. Discussion:

### A. Dismissal of Defendants in their Official Capacities

The Eleventh Amendment to the United States Constitution provides, that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

█ Despite the language "against one of the United States by Citizens *of another state*," the case law interpreting this constitutional provision makes it clear that the bar also extends to suits brought by citizens *of the defendant-state*. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Parden v. Terminal R. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). And, suit is additionally disallowed by the Eleventh Amendment when a state, not a named defendant, is a defendant-in-fact. *Scheuer v. Rhodes, supra; Edelman v. Jordan, supra.* As a matter of practice, this latter circumstance occurs when any money judgment rendered would be paid out of state funds. In this case, it is certain and

---

11. 42 U.S.C. § 1983 is not utilizable as a vehicle to pursue defamation claims. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

12. If any party would argue with the court's rendering of the facts, the claims, or the relief sought in these motions, they are welcome to do so, in writing, in clear, concise and complete fashion, upon receipt of this memorandum opinion and order.

undisputed that any such judgment awarded plaintiff and rendered against defendants in their official capacities would be paid by the State of West Virginia.

■ There is, however, a situation to which the Eleventh Amendment's bar does not apply: when a state gives its consent to suit being filed against it. *Edelman, supra,* 415 U.S. at 662–63, 94 S.Ct. at 1355–56. In this regard, plaintiff has made no allegation in her complaint that the State of West Virginia has consented to suit herein. Indeed, it appears that the State is currently *unable* to grant permission for this or like suits (*See Alabama v. Pugh, infra* ), because of West Virginia's corollary to the Eleventh Amendment, *W.Va.Const.,* Art. VI, § 35:

> The State of West Virginia *shall never* be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

(emphasis added)

■ The Supreme Court of the United States has stated, in *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), that Art. I, § 14 of the Alabama Constitution *precludes* Alabama from waiving its Eleventh Amendment privilege against being sued in law or equity. That provision of the Alabama Constitution is, in pertinent part, identical to *W.Va.Const.* Art. VI, § 35. Therefore, and since this action is not a "garnishment or attachment proceeding," the State of West Virginia is not amenable to suit herein either as a named party or a party-in-fact. Inasmuch as we have already determined that any money judgment levied against these defendants in their official capacities would deplete the State of West Virginia's coffers, all defendants must be, and hereby are DISMISSED from this suit, but only to the extent that they are respectively sued in their official capacities.

The court would point out that this limited dismissal of defendants in their official capacities also applies to the answering defendants (Kirby, Massie, Isenhower, Naum and Wood) since each of them has pleaded the Eleventh Amendment as an affirmative defense to plaintiff's charges.

B. *Dismissal of the 42 U.S.C. § 1983 Claims*

One of the most troublesome issues facing the court is the survivability of the claims brought pursuant to 42 U.S.C. § 1983. It is appropriate to look to the following language from 42 U.S.C. § 1988 for guidance in this connection:

> The jurisdiction . . . conferred on the district courts by the provisions of this chapter [including 42 U.S.C. § 1983] . . . shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object or are deficient in the provisions necessary to furnish suitable remedies . . ., the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

In interpreting § 1988, both the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have indicated that, in the absence of federal statutory [13] mandate, state law is the primary remedial reference point. *Robertson v. Wegmann,* 436 U.S. 584, 589–590, 98 S.Ct. 1991, 1994–1995, 56 L.Ed.2d 554, *Dean v. Shirer,* 547 F.2d 227, 229 (4th Cir. 1976). *See also Davis v. Oregon State University,* 591 F.2d 493 (9th Cir. 1978); *Duchesne v. Sugarman,* 566 F.2d 817 (2nd Cir. 1977); *Spence v. Staras,* 507 F.2d 554 (7th Cir. 1974); *Hall v. Wooten,* 506 F.2d 564

---

13. Whenever "federal statutory law" is mentioned in this section, the reference is not only to such but also to federal constitutional provisions.

(6th Cir. 1974); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir.), *cert. denied* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); *Pritchard v. Smith*, 289 F.2d 153 (8th Cir. 1961); *Black v. Cook*, 444 F.Supp. 61 (W.D.Okla.1977). As the courts have viewed § 1988, by its provisions Congress has established the following hierarchy of authority:

1. Federal statutory law, unless "not adapted to the object" or "deficient," applies;

2. If federal statutory law is "not adapted to the object" or "deficient," state law applies, unless it is "inconsistent with the Constitution and laws of the United States."

3. If state law is "inconsistent with the Constitution and laws of the United States," then "federal common law" obtains.

■ "[O]ne specific area not covered by federal [statutory] law is that relating to 'the survival of ... actions under [42 U.S.C.] § 1983 ....'" *Robertson, supra,* 436 U.S. at 589, 98 S.Ct. at 1994, quoting from *Moor v. County of Alameda*, 411 U.S. 693, 702 n.14, 93 S.Ct. 1785, 1792 n.14, 36 L.Ed.2d 596 (1973). Therefore, resort must be made to state law. In this instance, the case of *Burt v. Abel*, 466 F.Supp. 1234 (D.S.C.1979), is instructive on procedure: "[t]he survivability of a § 1983 cause of action must be determined by deciding whether an identical or analogous cause of action would survive under [state] law...." *Id.* at 1237 (emphasis added)

The issue before the court, then, is whether West Virginia law bearing upon the survivability of plaintiff's § 1983 action here is "inconsistent with the constitution and laws of the United States."

The court could find no West Virginia law squarely answering the question of whether a 42 U.S.C. § 1983 action survives the death of the party allegedly wronged.[14] And, in this court's view, there is no West Virginia law which so closely parallels 42 U.S.C. § 1983 that it could be considered "identical" thereto. It is thus necessary for the court to discern what claims recognized in West Virginia are most "analogous" to plaintiff's, claims herein.

■ In recognition that 42 U.S.C. § 1983 does not, in and of itself, generate any rights, *Chapman v. Houston Welfare Rights Orgztn.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1970), *on remand* 599 F.2d 111 (5th Cir. 1979); that what it does create is "a species of ... liability" for constitutional torts, *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976); and that "[i]n some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right," *Carey v. Piphus*, 435 U.S. 247, 258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978), most courts have looked to the state common law torts underlying a given § 1983 claim to determine survivability or answers to other procedural concerns not covered by federal statutory law. *E.g., Carey v. Piphus; Burt v. Abel; Dean v. Shirer; Hall v. Wooten*; and *Brazier v. Cherry*, all *supra*; also, *see Roberts v. Rowe*, 89 F.R.D. 398 (S.D.W.Va.1981).

The court has already rather generally classified the torts underlying plaintiff's § 1983 claims as: false arrest and imprisonment; deliberate indifference to medical needs; and inadequate protection from harm/wrongful death. Adopting the procedure espoused in the cases cited heretofore, the following West Virginia causes would seem most analogous thereto:

| Underlying tort | W.Va. Claim |
| --- | --- |
| False arrest | False arrest |
| False imprisonment | False imprisonment |
| Deliberate indifference to medical needs | Medical malpractice; neglect |
| Inadequate protection from harm/wrongful death [15] | Wrongful death |

14. This court is aware of *Roberts v. Rowe*, 89 F.R.D. 398 (S.D.W.Va.1981). See n. 24, *infra*.

15. A wrongful death claim may be brought pursuant to 42 U.S.C. § 1983. *Brazier v. Cher-ry*, 293 F.2d 401 (5th Cir. 1961); *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir. 1974); *Galindo v. Brownell*, 255 F.Supp. 930 (S.D.Cal.1966.)

The last mentioned claim, wrongful death, will be discussed in a later section of this opinion. The court now analyzes the other claims to determine their survivability under West Virginia Law.

The general West Virginia law of survival is codified in *W.Va.Code* § 55–7–8a(a) which reads as follows:

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or *injuries to the person and not resulting in death*, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

(emphasis added)

At common law, there was no survival of personal injury actions. A wronged plaintiff took with him to the grave his unfiled claim for damages for purely personal torts, such as false arrest, defamation, assault, etc. *Railing v. Case*, 131 F.Supp. 754 (N.D. W.Va.1955); *Tice v. E. I. duPont de Nemours & Co.*, 144 W.Va. 24, 106 S.E.2d 107 (1958); *N&W Rwy. Co. v. Read*, 87 Va. 185, 12 S.E. 395 (1890).

West Virginia has, by § 55–7–8a(a), changed the common law to provide for survivability of "injuries to the person . . . not resulting in death." There is no West Virginia law which permits survival of actions for personal injuries which do result in death.

All of the claims which underlie plaintiff's § 1983 action herein are undeniably in the realm of personal injury. Therefore, the question of whether or not plaintiff's decedent allegedly died as a result of the alleged injuries becomes crucial.

Plaintiff, in paragraph "1a" of her complaint alleges that:

> [t]his is an action for damages rising out of the Constitution [and] laws of the United States for the false imprisonment of an individual, Elmer Combs, in the West Virginia State Penitentiary against his will and without lawful process and *death resulting from* the unlawful incarceration, *from* the failure to properly treat the decedent once he was falsely imprisoned *and from* deliberate indifference to his well-known medical needs.

Thus, in the case at bar, it is charged by plaintiff that her decedent died *as a result* of the alleged tortious behavior vested upon him by the defendants. It is important to note that plaintiff's only claim which did not allegedly cause decedent's death is her wrongful death claim.[16]

Thus, no provision of *W.Va.Code* § 55–7–8a(a) allows the survival of claims of false arrest, false imprisonment, medical malpractice or neglect herein.[17] *W.Va.Code* § 55–7–8a(a) does not operate to effect survival, unless: one, the death of the injured person occurs prior to the institution of the suit, and two, his or her death is from causes unrelated to the suit's complaints. *Conrad v. Wertz*, 278 F.Supp. 428 (N.D.W. Va.1968).

Therefore, applying the most analogous West Virginia law to the circumstances here, the court finds that plaintiff's § 1983 claim, save any possible wrongful death claims she may have thereunder, would not survive decedent's death. The issue is not yet resolved, however, for the

---

16. While "false arrest" is not specifically mentioned in paragraph "1a," the court will read the language of "false imprisonment . . . against his will and without lawful process" and "unlawful incarceration" in context to include both false arrest and false imprisonment.

17. Indeed, with respect to at least the false arrest and false imprisonment claims, it makes no difference, under West Virginia law, whether or not the injuries are said to have caused death. The Supreme Court of Appeals of West Virginia has "held that . . . the [state] Legisla-

ture intended to exclude from statutory survivability . . . such personal torts as defamation, false arrest and imprisonment, and malicious prosecution." *Cavendish v. Moffitt*, 253 S.E.2d 558, 559 (1979), citing *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 244 S.E.2d 321, 325 (W.Va.1978). While the opining on survivability in *Snodgrass*, "a civil action to collect the penalty provided in the state usury statute" (Id. at 322), is clearly dictum, the *Cavendish* court characterizes it as a holding and we will treat it as such.

court must still determine if this outcome is "inconsistent with the Constitution and laws of the United States."

In making this determination, the court is not bound to the stark language of the Constitution and statutes of the United States, but consideration must also be given to the policies behind the same. *Robertson, supra,* 436 U.S. at 590, 98 S.Ct. at 1995; *Sullivan v. Little Hunting Park,* 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969); *see Johnson v. REA, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). The following excerpts from *Robertson* are thus helpful:

> The instant cause of action arises under 42 U.S.C. § 1983, one of the "Reconstruction civil rights statutes" that this Court has accorded " 'a sweep as broad as [their] language.' " *Griffin v. Breckenridge,* 403 U.S. 88, 97 [91 S.Ct. 1790, 1796, 29 L.Ed.2d 338] (1971), quoting *United States v. Price,* 383 U.S. 787, 801, [86 S.Ct. 1152, 1160, 16 L.Ed.2d 267] (1966).

> Despite the broad sweep of § 1983 we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship. *The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law....*

> It is...difficult to see how any of § 1983's policies would be undermined if [plaintiff's] action were to abate. The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate ... *[T]he fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in*

> *situations in which there is no claim that the illegality caused the plaintiff's death.* A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him. In light of this prospect, even an official aware of the intricacies of [state] survivorship law would hardly be influenced in his behavior by its provisions.

> ... A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant .... *Our holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983.... We intimate no view, moreover, about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death.*

436 U.S. 590–594, 98 S.Ct. 1995–1997 (emphasis added, footnotes and section headings omitted).

In *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Supreme Court opted for a federal common law rule of survival in an action based on *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[18] *Carlson* was an action by the administratrix of a federal prisoner who had died while he was in federal custody, for

---

**18.** *Bivens* was an action against federal law enforcement officials for deprivation of constitutional rights, founded directly upon the Constitution of the United States. The Supreme Court held therein that such a direct action, not theretofore allowed, was available to plaintiffs.

At least for purposes herein, *Bivens* actions could be said to be the "federal action" counterpart of 42 U.S.C. § 1983, which requires "state action." See n. 9, *supra.*

damages for violation of her decedent's due process, equal protection and Eighth Amendment rights. The bases of these alleged constitutional deprivations were *personal injuries* resulting from deliberate indifference to decedent's serious medical needs and failure to properly treat him therefor, and *his death resulting from same.* All defendants in *Carlson* were federal officials or employees.

At 446 U.S. 23, 100 S.Ct. 1474, the Court noted: "Whatever difficulty we might have resolving the question were the federal involvement less clear, we hold that only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here alleged and to protect against repetition of such conduct." And, while the Court's holding that "the question whether . . . [the] action survived [decedent's] death is a question of federal law" is based in the first instance on the fact that "*Bivens* actions are a creation of federal law" (*Id.*), that reasoning is clarified and narrowed somewhat by the language, noted *supra*, of "we hold that only a uniform federal rule of survivorship will suffice *to redress the constitutional deprivation here alleged* and *to protect against repetition of such conduct.*" (emphasis added)

The court would note that the constitutional deprivations alleged in the case at bar are extremely likened to those in *Carlson.* Any distinction made between the situations on the mere happenstance of § 1983 or *Bivens* character, save that indicated in n. 19 below, would seem highly artificial.[19]

In each, the decedent allegedly died as a result of civil rights violations being visited upon him by government officials and employees. The fact that one incident was in the federal milieu and the other in the state arena does not change the fact that constitutional deprivations of a markedly similar nature at least allegedly occurred. In addition, there is virtually no policy or philosophy difference between § 1983 and *Bivens* actions. The purposes of both are two-fold: to effect a remedy for wronged individuals, and to prevent or deter improper conduct by governments and their officials. *Carlson*, 446 U.S. 21, 100 S.Ct. 1473; *Id.* at n. 6; *Roberts v. Rowe, supra*, at 89 F.R.D. 400.

*Carlson* does distinguish *Robertson v. Wegmann, supra*, and its election of state law on the basis that the latter was a § 1983, and not a *Bivens*, case. A conclusion that this difference alone is responsible for the cases' respective adoptions of federal common law and state law is likewise oversimplistic[20] for at least two reasons. One, as discussed above, the works that § 1983 and *Bivens* actions were designed to accomplish are identical. Two, *Carlson* and *Robertson* seem to lend special significance to scenarios where constitutional deprivations are followed by resultant death. Each case notes that survival of a civil rights cause of action serves to deter official misconduct resulting in death. *Robertson*, 436 U.S. 591, 594, 98 S.Ct. 1995, 1997; *Carlson*, 446 U.S. 23, 100 S.Ct. 1474. The implicit converse is that lapse of these claims would

19. This court does perceive there to be a fundamental genetic difference between *Bivens* actions and § 1983 claims and their respective remedies. *Bivens* actions and their remedy are not, while § 1983 claims and their § 1988 "choice-of-law" formula are, creatures of congressional enactment. Congress having prescribed § 1988's formula as the course to follow in § 1983 actions such as the instant one, the courts are not free to adopt a federal common law rule of survival which applies to all § 1983 actions as was done, in effect, in *Carlson* with respect to all *Bivens* actions, and are not *as* free to apply federal common law in a given § 1983 case as in a given *Bivens* case. Hence, there is this basis for distinguishing the case at bar and *Robertson* from *Carlson* (i.e., § 1983 actions from *Bivens* actions).

However, it cannot be said that *Robertson*, for example, ultimately utilized state law solely because it was a § 1983 action, or that *Carlson* ultimately formulated and utilized federal law solely because it was a *Bivens* action. If the former were true, § 1988's mandate against application of a state law "inconsistent with the Constitution or laws of the United States" would not have been heeded, as it was at 436 U.S. 590–595, 98 S.Ct. 1995–1997; if the latter were true, state law would not have been looked to in the first instance, as *Carlson* instructs and as was done in that case at 446 U.S. 17, n. 4, 100 S.Ct. 1471, n. 4.

20. The reader's attention is invited to fn. 19, *supra*.

provide a windfall to the perpetrators of such misconduct. *Carlson* further distinguishes itself from *Robertson* and that case's utilization of state law in that "the [Robertson] plaintiff's death was not caused by the acts upon which the suit was based." 446 U.S. 24, 100 S.Ct. 1475. And, at 446 U.S. 24, n. 11, 100 S.Ct. 1475, n. 11, *Carlson* notes that "as to . . . survivorship questions [other than whether or not a cause survives when the victim of the alleged deprivations dies as a result thereof [21]] that may arise in *Bivens* actions, it may be that the federal law should choose to incorporate state rules as a matter of convenience."

 It is this court's opinion that *Carlson* and *Robertson*, separately, but especially when read *in pari materia*, stand implicitly for the proposition that in situations where death results from civil rights violations—whether in the *Bivens* or 42 U.S.C. § 1983 context—survival of a cause of action based on personal injuries resulting from those violations is in keeping with the philosophy behind and policies of the remedy, and thus perhaps should exist, *unless the law applicable to viable claims joined with the personal injury claims satisfies that philosophy and those policies as they apply to the personal injury claims.*

The court adds this italicized qualifier after a closer look at the *Carlson* case. The Supreme Court, at 446 U.S. 24, 100 S.Ct. 1475, stated:

> In sum, we hold that whenever the relevant state survival statute would abate a *Bivens*-type action brought against defendants whose conduct results in death, the federal common law allows survival of the action.

(quoting from *Green v. Carlson*, 581 F.2d 669, 674–75 (7th Cir. 1978)).

The indication is that, in a *Bivens* case, state law must *still* be looked to in the first instance. A review of the law of Indiana, the forum state in the *Carlson* case, reveals that the *Carlson* plaintiff's claims for her decedent's personal injuries abated thereunder, leaving her with her claim for decedent's wrongful death. *Ind.Code* § 34–1–1–2 allows a personal representative of a decedent to prosecute a wrongful death claim in such injury-resulting-in-death instances. However, if the decedent, as was true of the one in *Carlson*, is not survived by a spouse or dependent child or relative, damages are limited to funeral, burial and other expenses incurred directly in connection with the death, such as the costs of administration of the decedent's estate and medical costs relative to the injury resulting in death. If the *Carlson* plaintiff had been limited to the relevant Indiana wrongful death law, potential recovery would have been even further limited inasmuch as the Federal government was *ab initio* responsible for at least the relevant medical expenses of decedent, a federal prisoner at the time of his death. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). It is clear that the Supreme Court found these limitations on potential recovery to be such as to not fulfill one or both of the *Bivens* purposes. If Indiana's wrongful death law had provided for more liberal recovery, as applied to the facts of the *Carlson* case, and those purposes had been deemed thereby met, the court takes it that a federal common law of survival would likely not have been fashioned or applied.

The plaintiff at bar, as did the plaintiff in *Carlson*, has joined a claim for decedent's wrongful death along with those for decedent's antecedent personal injuries. Inasmuch as a wrongful death claim does not become viable until the deceased's death, there is obviously no issue of the survivability or abatement of such a claim. Hence, the wrongful death portion of plaintiff's § 1983 cause has garnered little attention up to now.

The court thus views its task to be determining whether or not West Virginia's

---

21. The court would add "unless the law applicable to claims joined with the personal injury claims satisfies the philosophy behind and the policies of 42 U.S.C. § 1983 as it relates to the personal injury claims." For further explanation, the reader's attention is invited to the body of the opinion immediately *supra*.

wrongful death law, in and of itself, satisfies the policies underlying § 1983 as they relate to plaintiff's claims for decedent's personal injuries.

*West Virginia Code* § 55–7–5 is the state's wrongful death statute, and reads as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who ... would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured ....

*West Virginia Code* § 55–7–6 provides the following procedural guidelines for wrongful death suits:

> Every ... [wrongful death] action shall be brought by and in the name of the personal representative of such deceased person who has been duly appointed [as such] ....
>
> In any such action for wrongful death the jury may award such damages as to it may seem fair and just, and may direct in what proportion they shall be distributed to the surviving spouse and children, including adopted children and stepchildren, and grandchildren of the deceased, or if there be none such, then to the parents, brothers and sisters of the deceased, if there be none such, only then to such person or persons who were dependent upon the decedent for support.
>
> The verdict of the jury shall include, but may not be limited to damages for the following: (a) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (b) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (c) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (d) reasonable funeral expenses.

■ It is the court's opinion that the remedies available under the West Virginia wrongful death law, as applied to the facts of the within case, suffice to meet the § 1983 "deterrence of official misconduct" policy. Decedent Jones was and is survived by his mother, one brother, three sisters and the spouses of all of these persons.[22] The potential damages in a West Virginia wrongful death action are broad by category and notably include punitive damages. *Bond v. City of Huntington*, 276 S.E.2d 539 (W.Va.1981). The other stated policy of § 1983, that of compensating the victim of constitutional deprivation, is not in issue as it relates to the personal injury claims, since Elmer Combs is dead. "The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the ... [administratrix] of the deceased's estate." *Robertson*, 436 U.S. 592, 98 S.Ct. 1995, cited *supra*.[23]

■ Therefore, the court answers the question of "whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death" from *Robertson*, 436 U.S. 594, 98 S.Ct. 1997, as "yes" in situations like the instant one, in which wrongful death claims are also pleaded and where the state law

---

22. This is as of the time of the filing of the amended complaint, as represented thereby. The court notes that decedent's stepfather and siblings' spouses would likely not be entitled to any portion of any wrongful death recovery obtained.

23. Again, the court is ascertaining whether or not the purposes of 42 U.S.C. § 1983 *as they relate to the personal injury claims* are complied with in the context of the wrongful death claim.

As a matter of law, at least in West Virginia, those considered to be the parties wronged in wrongful death actions are the survivors and not the decedent and/or his estate. Therefore, a 42 U.S.C. § 1983 claim for wrongful death would meet *both* the compensation and deterrence policies of § 1983 *as they relate to that claim.*

covering such claims is not, *as analyzed and found herein*, "inconsistent with the Constitution and laws of the United States."

Accordingly, and adopting West Virginia law as 42 U.S.C. § 1988 instructs, the court ORDERS that plaintiff's claims founded upon 42 U.S.C. § 1983, save any portion of that claim seeking recovery for wrongful death, have abated and are hereby DISMISSED.[24]

### C. *Dismissal of State Law/Pendent Jurisdiction Claims:*

 Pendent jurisdiction is that power in the federal courts to hear state claims which, when considered with joint federal claims, constitute one constitutional case. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The federal claims must be "substantial" claims, such that they alone confer subject-matter jurisdiction upon the court. And, while there is no obligation for a federal court to exercise its pendent jurisdiction, it should do so when these stated requirements are met and when judicial economy and common sense would dictate that all of a given plaintiff's claims, without regard to their state or federal character, should be joined and resolved in one action. *Id.*

 It has been determined, *supra,* that the plaintiff may pursue her wrongful death claim pursuant to 42 U.S.C. § 1983.

24. The opinion of *Roberts v. Rowe,* 89 F.R.D. 398 (S.D.W.Va.1981), authored by Judge William M. Kidd of this court, is worthy of mention herein. In *Roberts,* plaintiff, who had filed suit on February 15, 1978, alleging civil rights violations (via 42 U.S.C. § 1983) resulting from a policeman's excessive force being visited upon him during an arrest attempt, died, from causes unrelated to any assault complained of, on May 1, 1979. *Id.* At 400–401:

> The defendant's ... contention is that this cause of action does not survive under West Virginia law. The defendant argues that, "... although the plaintiff alleges violations of his civil rights, he is actually alleging false arrest and malicious prosecution, which do not survive in West Virginia...." Plaintiff further says that such actions were "specifically excluded by the legislature from the survivability statute [*W.Va.Code* § 55–7–8a]." ... [N]o West Virginia case has held that a civil rights action does not survive the death of a plaintiff.
>
> The Courts have consistently treated 42 U.S.C. § 1983 as a bit special, and have, without exception, recognized the liberality intended by its passage....
>
> With this background in mind, this Court will not accept the proposition that West Virginia's highest court would lump together false arrest and malicious prosecution with a civil rights claim involving personal injuries and deny the survivors an opportunity to vindicate wrongs *and* prevent constitutional abuses.
>
> An analysis of the language of the West Virginia survival statute itself would clearly indicate that this case can be maintained by the decedent's survivor. The statute says that claims for "injuries to the person and not resulting in death ... also shall survive ...." In the absence of legislative or judicial language which expressly prohibits survival of a civil rights action, this Court is

bound to follow the plain language of West Virginia's legislature....

> The Court is of the opinion that this action does survive the plaintiff's death....

The complaint in the *Roberts* case was drawn in two counts. The first count alleged assault during an arrest attempt. The second count alleged, in effect, malicious prosecution. Apparently, the defendant's argument was that count one of this § 1983 complaint sounded in false arrest, count two in malicious prosecution. Count two clearly was a malicious prosecution claim, but any false arrest claim contained in either count would had to have been inferred. As Judge Kidd quite obviously noted, merely because the assault occurred in the context of an attempted arrest did not transform the claim into one for false arrest.

At any rate, Judge Kidd's opinion boils down to one stating that a claim for assault, not resulting in death, and brought pursuant to 42 U.S.C. § 1983, survives the death of the victim. What Judge Kidd apparently did is look to the most analogous West Virginia cause of action—that of the personal injury of assault—to determine if, in instances where there is no allegation that the assault resulted in death, a cause of action for same would survive the death of the victim. Judge Kidd found that *W.Va.Code* § 55–7–8a(a) was sufficient to answer this question in the affirmative, and that the exceptions noted in *Cavendish* and *Snodgrass, supra* at n. 17, had no relevant application.

Judge Kidd further noted that this assault cause of action would not be defeated even if it were *combined* with claims of malicious prosecution and false arrest. However, he did not directly address the issues of survivability of the malicious prosecution, and any implied false arrest, claims. See n. 17, *supra.*

The court deems this to be a "substantial" federal claim for purposes of pendent jurisdiction, and when considering the situation as a whole, finds an exercise of pendent jurisdiction to be advised in this case.

It is interesting to note that plaintiff's state law claims are, of necessity, somewhat in the alternative to her § 1983 claims. However, they are not entirely so, and thus are properly considered separately.

 Based on *W.Va.Code* § 55–7–8a(a), Complaint ¶ 1 and the reasoning relating to survivability of plaintiff's § 1983 claims, all *supra*, the court finds that plaintiff's state law claims for personal injury to decedent abate and are hereby DISMISSED. Based on *W.Va.Code* § 55–7–5 *supra*, and subsequent provisions of the *W.Va.Code*, the court finds that plaintiff's wrongful death claim survives, and to the extent defendants seek dismissal thereof, their motions for same are hereby DENIED.

#### D. *Miscellaneous*

To the extent that such has not been dealt with in the body of this opinion, relief that the defendants sought in their motions shall not be granted, and defendants' motions seeking such are hereby DENIED.

 Plaintiff shall be dismissed in her individual capacity. She may only pursue a wrongful death claim as the duly-appointed personal representative of the decedent's estate. *W.Va.Code* § 55–7–6. Even though, for purposes of such a claim, the representative acts as trustee for the decedent's next of kin and not for decedent's estate, an estate administrator has been considered a qualified personal representative for purposes of *W.Va.Code* § 55–7–6. *Dunsmore v. Hartman*, 140 W.Va. 357, 84 S.E.2d 137 (1954). Plaintiff's dismissal from this case in her individual capacity should have no effect on her ability to recover anything which she seeks and is found entitled to.

#### III. *Conclusion:*

Plaintiff is ordered, within ten days after the date of entry of this order, to file a second amended complaint, making that document consistent with the action taken herein. All defendants, including those who have heretofore answered, shall have ten days from the filing of plaintiff's second amended complaint to present answers responding to said complaint. All parties are advised that the court intends to schedule this case for trial within the next few months.